While crossing a street in Huntsville, Alabama, Marjorie Branum was struck by a South Central Bell Telephone Company work van. Because of injuries she sustained, she filed an action against South Central Bell and Billy J. Davis, Jr., the driver of the van, alleging negligence and wantonness. She also claimed that South Central Bell had negligently entrusted the van to Davis. It is not disputed that Davis was acting within the line and scope of his employment at the time of the accident. Both defendants denied the claims, and South Central Bell alleged that Ms. Branum had been contributorily negligent in regard to the accident. Ms. Branum dismissed her claims against Davis and dismissed the negligent entrustment claim against South Central Bell. At the close of the evidence for Ms. Branum, South Central Bell moved for a directed verdict on the negligence and wantonness claims. The motion was denied. South Central Bell renewed the motion at the close of all the evidence, and it was again denied. The jury returned a general verdict for Ms. Branum in the amount of $500,000 in "past damages" and $250,000 in "future damages" and the trial court entered judgment thereon. South Central Bell filed a motion for a judgment notwithstanding the verdict, *Page 796 
or, alternatively, for a new trial. That motion was denied.
On appeal, South Central Bell argues that the trial court erred in submitting the wantonness and negligence claims to the jury. Because we hold that there was not sufficient evidence to support a finding that Davis's actions were wanton, and because the jury returned a general verdict for Ms. Branum, we reverse the judgment of the trial court and remand this cause for a new trial. Thus, we will not discuss the other issues raised by South Central Bell.
This action was filed after June 11, 1987; therefore, the applicable standard of review is the "substantial evidence rule." Ala. Code 1975, § 12-21-12; Koch v. State Farm Fire Casualty Co., 565 So.2d 226 (Ala. 1990); Robichaux v. AFBICDevelopment Co., 551 So.2d 1017 (Ala. 1989). In actions filed after June 11, 1987, a directed verdict for the defendant is proper when the plaintiff has failed to present "substantial evidence" as to each element of her cause of action. Koch v.State Farm Fire Casualty Co., supra.
Viewed in a light most favorable to Ms. Branum, the facts are as follows:
At approximately 1:30 p.m. on a clear, dry day, Ms. Branum departed Huntsville Hospital by the main exit, which is in the middle of the block on the east side of Gallatin Street, a two-way, four-lane thoroughfare that runs north and south. The hospital is bordered on the south side by Governor's Drive and on the north side by Sivley Road. One block north of Sivley Road, Gallatin Street is intersected by St. Clair Avenue. As Gallatin Street proceeds south through Sivley Road, it veers slightly to the west. After reaching the curb on Gallatin Street, Ms. Branum looked south and observed that there was no approaching traffic. Looking north, she observed that the traffic light at the intersection of Gallatin Street and Sivley Road was red. As to where she saw the van, Ms. Branum's testimony is somewhat unclear. Ms. Branum testified that, at that time, she saw the South Central Bell van and an automobile stopped at "the" red light. Both were headed south on Gallatin Street, the van in the far right lane, and the car in the left lane. At one point, she testified that as she stepped off the curb onto Gallatin Street the van and the car were stopped at the red light at Gallatin Street and Sivley Road, and that she did not see the van and the car again until she turned at the sound of squealing tires as Davis applied the brakes.[1] She later testified that as she was crossing the street she saw the van and the car proceeding down Gallatin Street through the intersection at Sivley Road, that the van and the car were "zigzagging," and that the van was "trying to keep from hitting" the car. At any event, she testified that she had walked west across Gallatin Street and that she was approximately two steps from the west curb of Gallatin Street when the South Central Bell van hit her.
Davis testified that he and the driver of a car stopped at the traffic light on Gallatin Street at St. Clair Avenue, one block north of Sivley Road. He said that when the light turned green both drivers proceeded south through that green light and then through a green light at Gallatin Street and Sivley Road, at 30 to 35 miles per hour. The speed limit on Gallatin Street was 35 m.p.h. His testimony concerning his speed was corroborated by other witnesses and was not disputed by Ms. Branum. Davis testified that as he proceeded south on Gallatin Street he was looking straight ahead but did not see Ms. Branum. He stated that as he and the driver of the adjacent car passed through the slight westerly curve at the intersection of Sivley Road his attention was diverted by the car, which he said drifted toward his lane and continued on that path. He removed his foot from the accelerator, he said, and drifted to the right to avoid a collision. At this point, the car was about a half car length ahead of him. Davis testified that *Page 797 
when he was able to do so he looked up, and that when he did he saw Ms. Branum for the first time. He said he applied the brakes about 15 or 20 feet before his van struck her. When asked whether he had ever seen pedestrians cross Gallatin Street in the middle of the block, Davis replied that in the downtown area people commonly crossed the street in such a manner.
Ralph Hatcher, an automobile accident reconstructionist, testified that the point of impact was on Gallatin Street, 156 feet south of the intersection at Sivley Road, that a car moving at 30 miles per hour travels 43.98 feet per second,[2] and that the van skidded 15 feet before it hit Ms. Branum.
What constitutes wanton misconduct depends on the facts presented in each particular case. Central Alabama ElectricCoop. v. Tapley, 546 So.2d 371 (Ala. 1989); Brown v. Turner,497 So.2d 1119 (Ala. 1986); Trahan v. Cook, 288 Ala. 704,265 So.2d 125 (1972). A majority of this Court, in Lynn StricklandSales Service, Inc. v. Aero-Lane Fabricators, Inc.,510 So.2d 142 (Ala. 1987), emphasized that wantonness, which requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission, is not to be confused with negligence (i.e., mere inadvertence):
 "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury . . . .
 "Negligence is usually characterized as inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act. 'Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.' McNeil v. Munson S.S. Lines, 184 Ala. 420, 423, 63 So. 992 (1913). [Emphasis in McNeil] . . .
" . . . .
 "A clear-cut distinction is made between negligence and wantonness in Dooley's Modern Tort Law § 4.22 (1982) at 117:
 " 'Willful and wanton conduct has a well-defined meaning at law. It is sometimes expressed in terms of "reckless disregard of the safety of another." Willful and wanton conduct should not be confused with negligence. It has been correctly stated that the two concepts are as "unmixable as oil and water." ' [Emphasis added in Lynn Strickland Sales.]
 "Again, the distinction is discussed in Speiser, Krause, and Gans, 3 The American Law of Torts § 10.1 (1986) at 358:
 " '. . . Willfulness or wantonness imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act, and strictly speaking, is not within the meaning of the term "negligence," which conveys the idea of inadvertence, as distinguished from premeditation or formed intention.' "
510 So.2d at 145-46. See also Central Alabama Electric Coop. v.Tapley, supra.
South Central Bell argues that the only conceivable "act" of wantonness would be Davis's failure to see Ms. Branum until immediately before impact and that this failure was not a wanton omission because his attention was diverted by the movements of the car in the left lane that was crowding his path. Conversely, Ms. Branum argues that the evidence adduced at trial — evidence of the clear view that Davis had looking south on Gallatin Road, the distance between the intersection at Sivley Road and the point of impact, and Davis's testimony concerning the car's encroaching from the left lane-was substantial evidence that Davis failed to watch where he was going while he was travelling a distance of approximately 150-160 feet south of the Sivley Road intersection. Such a failure, *Page 798 
she argues, made with knowledge of the habits of pedestrians in the downtown area, constitutes wanton conduct.
Ms. Branum contends that the facts in this case are analogous to the facts in Bishop v. Poore, 475 So.2d 486 (Ala. 1985). In that case, the defendant, after stopping at a stop sign at the exit from a parking lot, drove across two northbound lanes of traffic to enter the southbound land of traffic. The plaintiff was driving north on a motorcycle, and the vehicles collided, causing injury to the plaintiff and damage to his motorcycle. A majority of this Court held that there was a scintilla of evidence that permitted an inference that the defendant had failed to look in the direction of the plaintiff, and that that failure could be regarded as reckless indifference to the knowledge that such an omission could likely result in injury to another. Bishop v. Poore, supra.
We find that the facts of this case more closely resemble those in Ellison v. Forsythe, 541 So.2d 492 (Ala. 1989), in which the injured plaintiff was a passenger in an automobile that was struck from behind while travelling down a four-lane road. In that case, the plaintiff offered no evidence that the defendant acted wantonly. The defendant stated in an affidavit that he was driving within the speed limit and that his attention was diverted by an automobile that had pulled up beside him and was crowding his path. He said that when he returned his attention to the road ahead of him, the automobile in which the plaintiff was a passenger had pulled into his lane and suddenly decelerated. He stated that he applied his brakes but was unable to avoid the collision. This Court affirmed the summary judgment in favor of the defendant.
Davis testified that as he passed through the slight curve at the intersection at Sivley Road his attention was diverted by the adjacent automobile, which began to crowd his path and continued to do so after they had passed through the intersection. He testified that he decelerated and drifted to the right to avoid colliding with the encroaching car. Davis testified that, after drifting to the right, he looked up, seeing Ms. Branum for the first time. He said he immediately applied the brakes but could not avoid hitting her. Ms. Branum's testimony corroborates his testimony. She said that before the impact she saw the van zigzag as if its driver was trying to avoid a collision with the car. We hold that these facts did not constitute sufficient proof that Davis, on that occurrence, acted wantonly. Therefore, the trial court erred in not granting the defendant's motion for a directed verdict on the wantonness claim. We further hold, however, that the trial judge did not err in submitting the claim of negligence to the jury.
In this case, the jury returned the following verdict:
 "We, the jury, find in favor of the plaintiff and assess damages at $750,000.
 "We, the jury, further find that past damages to be $500,000 [sic], and find that future damages to be $250,000 [sic]."
Because the wantonness claim was not supported by the evidence and therefore should not have been submitted to the jury, that claim was a "bad count."
In Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981), we addressed the effect of a general verdict when a case contains both a "good count" (i.e., one supported by the evidence) and a "bad count" and the defendant, in his motion for directed verdict, has failed to challenge the bad count with specificity:
 "[I]f a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence. If this is not done and all counts go to the jury and a general verdict is returned, the court will presume that the verdict was returned on a valid count."
It follows that if the party moving for directed verdict follows this procedure and yet good counts and bad counts go to the jury and the jury returns a general verdict, this Court cannot presume that the verdict *Page 799 
was returned on a good count. National Security Fire CasualtyCo. v. Vintson, 454 So.2d 942 (Ala. 1984). A review of the record convinces us that the motion for directed verdict, and the specificity of the ground assigned, met the requirements of the two-pronged test enunciated in Aspinwall. See Lawrence v.Lackey, 451 So.2d 278 (Ala. 1984). Thus, we cannot presume that the general verdict was based on the count that was supported by the evidence, i.e., the negligence count. National SecurityFire Casualty Co. v. Vintson, supra. Likewise, we cannot presume that the entire award is composed of compensatory damages. See Charter Hospital of Mobile, Inc. v. Weinberg,558 So.2d 909 (Ala. 1990).
Based on the foregoing, the judgment is hereby reversed and the cause is remanded for a new trial.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.
[1] It is unclear from her testimony whether she heard the squeal of the tires of both the van and the car or of just the van.
[2] Our own calculations would indicate 44 feet per second.