590 So.2d 142 (1991)
VALLEY BUILDING & SUPPLY, INC.
v.
Diane LOMBUS, as administratrix of the Estate of Johnny Lombus, deceased.
89-1788.
Supreme Court of Alabama.
June 28, 1991.
On Return after Remand November 22, 1991.
*143 John W. Clark, Jr. and David M. Wilson of Clark & Scott, Birmingham, for appellant.
Steven F. Casey of Balch & Bingham, Birmingham, R. Blake Lazenby of Wooten, Thornton, Carpenter, O'Brien & Lazenby, Talladega, for appellee.
MADDOX, Justice.
Valley Building and Supply, Inc. ("Valley"), appeals from a judgment entered on a jury verdict of $600,000 in favor of Diane Lombus ("Lombus"), as administratrix of the estate of Johnny Lombus, in a wrongful death action. Valley contends that the trial court erred in 1) denying Valley's motion for directed verdict as to the wantonness count, 2) denying Valley's motion for mistrial after the issue of insurance had been improperly injected into the case by Lombus, 3) failing to give the entire oral charge to the jury when the jury had asked to be reinstructed on the issues of negligence and wantonness, and 4) failing to grant Valley's motion for remittitur.
On December 16, 1988, an employee of Mitchell Transport, Inc., delivered a load of roofing material on an 18-wheel tractor-trailer rig to Valley at its business location on U.S. Highway 280 in Childersburg, Alabama. After unloading the roofing material, the driver asked Valley employees how he was to exit Valley's premises. He was told that Valley employees would stop the traffic on U.S. Highway 280, and that he would then be able to back into the highway.
In order to stop the traffic, Kyle Spates, an employee of Valley's, enlisted the aid of Eddie Lytton, a customer of Valley's. Neither was equipped with any type of warning devices in order to stop the traffic. Spates stopped at the edge of the highway, and Lytton proceeded down the highway. There was evidence that Lytton was to stop the traffic and then inform Spates when it was safe for the truck to back onto the highway; that Lytton signaled that it was safe, and that Spates then signaled the truck driver to back onto the highway. There was conflicting evidence, however, on this point, and one witness who was travelling on Highway 280 near the point of the collision testified that he "never saw anyone flagging traffic" and that "no one was stopping, no brakes lights or nothing." In any event, Johnny Lombus, who was traveling east on U.S. Highway 280, collided with the rear of the 18-wheel tractor-trailer rig and was killed instantly.
Ms. Lombus filed a wrongful death action against Valley, Mitchell Transport, Inc., and James Earl McHenry, alleging negligence and wantonness. Ms. Lombus entered into a pro tanto settlement with McHenry and Mitchell Transport during the trial, leaving Valley as the sole defendant.
Valley alleged that Mr. Lombus had been contributorily negligent in regard to the accident, and at trial, at the close of the plaintiff's evidence, Valley moved for a directed verdict on the wantonness claim. The motion was denied. Valley renewed the motion at the close of all of the evidence, and it was again denied. The jury returned a verdict in favor of Ms. Lombus in the amount of $600,000 and the trial court entered a judgment thereon. Valley filed a motion for a judgment notwithstanding the verdict, or, alternatively, for a new trial, or for remittitur. That motion was denied.
On appeal, Valley argues, among other things, that the trial court erred in submitting the wantonness claim to the jury. In reviewing the sufficiency of the evidence, we apply the "substantial evidence rule," because this action was filed after June 11, 1987. Ala.Code 1975, § 12-21-12; Koch v. State Farm Fire & Casualty Co., 565 So.2d 226 (Ala.1990) (in actions filed after June 11, 1987, a directed verdict for the defendant is proper when the plaintiff has *144 failed to present "substantial evidence" as to each element of her cause of action); Robichaux v. AFBIC Development Co., 551 So.2d 1017 (Ala.1989).
What constitutes wanton misconduct depends on the facts presented in each particular case. South Central Bell Telephone Co. v. Branum, 568 So.2d 795 (Ala. 1990); Central Alabama Electric Coop. v. Tapley, 546 So.2d 371 (Ala.1989); Brown v. Turner, 497 So.2d 1119 (Ala.1986); Trahan v. Cook, 288 Ala. 704, 265 So.2d 125 (1972). A majority of this Court, in Lynn Strickland Sales & Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142 (Ala.1987), emphasized that wantonness, which requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission, is not to be confused with negligence (i.e., mere inadvertence):
"Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury...."
510 So.2d at 145. See also Central Alabama Electric Coop. v. Tapley, supra, and South Central Bell Telephone Co. v. Branum, supra.
Valley argues that the only "act" that could be considered wanton would be the fact that Kyle Spates was aware that, if the truck was backed into the highway before the oncoming traffic was stopped, an accident could occur. At the time of the accident, it was "rush hour" in Childersburg. Nevertheless, Valley contends that Spates's acts, under the circumstances, were not wanton because Spates believed that all oncoming traffic had been stopped before the truck was backed into the highway. Ms. Lombus, on the other hand, argues that the evidence adduced at trial that it was Kyle Spates's responsibility to stop the oncoming traffic, that he delegated this responsibility to a Valley customer, and that he failed to provide any warning devices to the customer to be used in stopping the trafficwas substantial evidence that Spates failed to determine that the oncoming traffic had been stopped before he directed the driver of the 18-wheel tractor-trailer rig to back into the highway. This, she argues, made with the knowledge that it was "rush hour" in Childersburg, constituted evidence to support a finding of wanton conduct.
Ms. Lombus contends that the facts in this case are more egregious than those in Bishop v. Poore, 475 So.2d 486 (Ala.1985), in which this Court found the facts were sufficient to support a claim of wantonness. In that case, the defendant, after stopping at a stop sign at the exit from a parking lot, drove across two northbound lanes of traffic to enter the southbound lane of traffic. The plaintiff was proceeding north on a motorcycle, and the vehicles collided, causing injury to the plaintiff and damage to his motorcycle. A majority of this Court held that there was a scintilla of evidence that permitted an inference that the defendant had failed to look in the direction of the plaintiff, and that that failure could be regarded as reckless indifference to the consequences with knowledge that such an omission could likely result in injury to another. Bishop v. Poore, supra; Whaley v. Lawing, 352 So.2d 1090, 1092 (Ala.1977).
Although Spates testified that he had backed trucks into Highway 280 in this manner on several occasions and had never encountered any difficulty, that evidence fails to prove, as a matter of law, that he did not act wantonly on the occasion of the subject accident. Based on the evidence presented, the jury could have concluded that Spates was aware that Highway 280 was a well-traveled highway, yet failed to provide any type of warning devices to Eddie Lytton when he asked him for assistance in stopping traffic during "rush hour." Although Eddie Lytton did testify that he had assisted Spates several times in backing traffic into the highway, and witnesses testified that they saw Lytton flagging traffic down at the time of the accident, *145 there were other witnesses who testified that they did not see anyone trying to flag down traffic, and that cars travelling in the same direction as Lombus were not braking. We hold that these facts constitute substantial evidence upon which the jury could have found that Spates, on the occurrence in question, acted wantonly. Therefore, the trial court did not err in denying the defendant's motion for a directed verdict on the wantonness claim.
Valley next contends that the trial court erred in denying its motion for mistrial after the issue of insurance had been improperly injected into the case by Lombus. During the trial of this case, certain questions were asked concerning insurance. However, the substance of these questions, as well as who asked them, was not recorded, because the court reporter was absent from the room at the time the remarks were made. It does appear from the record, as we understand it, that the questions were asked by Valley's attorney.
Upon discovering the court reporter's absence, the trial court instructed the jury to disregard any testimony heard during the court reporter's absence. Once the court reporter began transcribing the testimony, Ms. Lombus's attorney asked the following questions:
"Q. Dale, Mr. Traylor asked you who first contacted you about this wreck and you said an insurance person?
"A. Yes.
"Q. For Ms. Lombus?
"A. I believe it was.
"Q. Could you be mistaken about that?"
At that point, Valley's attorney objected to the testimony. The trial court sustained the objection and offered to give a curative instruction to the jury. Valley declined the offer of a curative instruction and moved for a mistrial.
A trial court is vested with a wide discretion in determining whether incidents that occur during the course of a trial affect the right of either party to a fair trial, so as to require a mistrial. The trial court's decision will not be reversed unless it clearly appears that its discretion has been abused. General Finance Corp. v. Smith, 505 So.2d 1045 (Ala.1987). This Court held, in Hill v. Sherwood, 488 So.2d 1357 (Ala.1986), that while the indirect interjection of liability insurance into a trial as a fact to be considered by the jury "is generally considered improper, the resulting prejudicial effect is not per se ineradicable." 488 So.2d at 1360. In this case, the trial court sustained Valley's objection and offered to give a curative instruction to the jury. It appears that the trial court did not consider the effect of the remarks on the jury to be so prejudicial as to be beyond cure. See Hill at 1359. Based on this record, we cannot hold that the trial court abused its discretion in denying Valley's motion for mistrial.
Valley next contends that the trial court erred in failing to give the entire oral charge to the jury after the jury had asked to be reinstructed on the issues of negligence and wantonness. The trial court orally instructed the jury on negligence, contributory negligence, wantonness, and various rules of the road. After retiring to the jury room, the jury returned and asked to be reinstructed on the definitions of negligence and wantonness. The trial court proceeded to reinstruct the jury as to the definition of negligence and wantonness as the jury had requested. Valley objected to the reinstructions. The trial court removed the jury from the courtroom and allowed Valley to state its objections for the record. Valley alleged that the trial court had erred in failing to reinstruct the jury as to the entire oral charge, or, in the alternative, in failing to reinstruct the jury as to the definition of contributory negligence. The trial court refused to reinstruct the jury as to the full charge or as to the definition of contributory negligence. However, the trial court did bring the jury back into the courtroom, and it stated:
"THE COURT: I apologize for bringing you back again, but I forgot to tell you one thing, which is very important. I gave you these two definitions that you wanted me to give, and I want you to please remember that in addition to these definitions thatremember the entire *146 charge that I gave you when you are allowed to go back and start deliberating. Consider that charge along with these definitions I've just given you as being the complete charge in this case."
Valley contends that the jury was highly prejudiced against it when the trial court failed to give the jury the definition of contributory negligence in the court's recharge.
In Mobile Light & R.R. v. Burch, 12 Ala.App. 421, 68 So. 509 (1915), the Court of Appeals held that a jury instruction that singles out or gives undue prominence to particular evidence or facts is erroneous. That, however, is not the case here. The fact that the trial court did not reinstruct the jury as to the definition of contributory negligence does not mean that Valley is entitled to a new trial. In Brackett v. Coleman, 525 So.2d 1372 (Ala.1988), we held that a trial court should not be placed in error merely because its recharge did not restate all pertinent principles of law. See, e.g., Ole South Building & Supply Corp. v. Pilgrim, 425 So.2d 1086 (Ala. 1983). Upon a review of the record, we are not persuaded that the trial court's additional instructions were unduly weighted against Valley. In response to Valley's objection, the trial court, although not reinstructing the jury on contributory negligence, did remind the jury to remember the entire charge as previously given. We find no error to reverse on this point.
As its final contention, Valley asserts that the trial court erred in denying its motion for a new trial based on the ground that the verdict of the jury was excessive, and that the trial court failed to follow the procedure this Court requires in such cases, as set out in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). In Hammond we stated:
"We simply now require the trial courts to state for the record the factors considered in either granting or denying a motion for new trial based upon the alleged excessiveness or inadequacy of a jury verdict. We know of no other way by which this Court can discharge fairly its role of review." (Emphasis added.)
493 So.2d at 1379.
We noted, however, in Lowder Realty Co. v. Sabry, 542 So.2d 1240 (Ala. 1989), that it was never our intention to automatically remand every case in which excessiveness of the jury award is raised as an issue. Where the record on appeal is sufficiently clear for us to review the excessiveness issue, a Hammond remand is not necessary. However, the record must contain all the necessary factors for review if we are to review the case without the benefit of a Hammond hearing. Here, we believe a remand of the case for the trial court to conduct a hearing in accordance with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), would be appropriate.
In Hammond, this Court required trial courts to include their reasons for either granting or denying a motion for a new trial based upon the alleged excessiveness or inadequacy of a jury verdict, and in Hammond this Court set out some of the factors that trial courts should consider, such as the culpability of the defendant's conduct, the desirability of discouraging others from similar conduct, and the impact upon the parties. 493 So.2d at 1379.
In Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), this Court further outlined the factors trial courts should consider when reviewing a punitive damages award and should include in the Hammond order. Those factors include: (1) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred; (2) the degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; (3) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (4) the financial position of the defendant; (5) all the costs of litigation; (6) the imposition of criminal sanctions on the defendant *147 for its conduct, these to be taken in mitigation; and (7) the existence of other civil awards against the defendant for the same conduct, these also to be taken in mitigation.
The United States Supreme Court, in Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. ___, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), discussed the application of the Hammond-Green Oil standards and said that the standards "[i]mpose a sufficiently definite and meaningful constraint on the discretion of Alabama fact finders in awarding punitive damages," and that "[t]he Alabama Supreme Court's post-verdict review ensures that punitive damages awards are not grossly out of proportion to the severity of the offense and have some understandable relationship to compensatory damages."
It seems clear from a reading of Haslip that the Supreme Court of the United States considered the independent Hammond-Green Oil-type review to be essential in order to comport with due process requirements of the Fourteenth Amendment, and some post-Haslip decisions of that Court seem to confirm that reading of Haslip.[1] See Southern Life & Health Insurance Co. v. Turner, ___ U.S. ___, 111 S.Ct. 1678, 114 L.Ed.2d 73 (1991) ($499,000 punitive damages award in which no Hammond-type review was done, was remanded to this Court) and Intercontinental Life Insurance Co. v. Lindblom, ___ U.S. ___, 111 S.Ct. 1575, 113 L.Ed.2d 641 (1991) (Supreme Court remanded to this Court for further review a $1,000,000 award that exceeded the compensatory damages by a 79-1 ratio).
In view of the importance of a Hammond-Green Oil-type review in such cases, we remand this cause to the trial court to permit the trial court to conduct a Hammond-Green Oil review of the judgment, and to report its findings and conclusions within 28 days after the date this opinion is released.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and SHORES and KENNEDY, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
I view negligence as conduct that falls below the standard established by law for the protection of others against unreasonable risk of harm; and, in my opinion, the same conduct, whether it be action or inaction, that constitutes negligence also constitutes wantonness if the tort-feasor is conscious of his inaction or action and is conscious that by such inaction or action injury will likely or probably result. Lynn Strickland Sales & Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d at 148-49 (Houston, J., concurring in part, dissenting in part, and concurring in the result in part).
Viewing the facts (many of which are not set out in the majority opinion) in the light most favorable to the party in whose favor the jury found, as our standard of review requires, and considering the reasonable inferences that the jury could draw from those facts, under my concept of wantonness, there would be substantial evidence from which the jury could infer wantonness.

ON RETURN AFTER REMAND
MADDOX, Justice.
After this cause was remanded to the trial court for the purpose of reviewing the *148 verdict of the jury in accordance with the principles announced by this Court in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989), the trial court conducted a hearing and entered an order in which the court applied each of the Hammond-Green Oil factors. After the hearing, the Court concluded that there was no reason to reduce the verdict.
We have reviewed the trial court's order and have independently reviewed the facts and circumstances of this case. We, too, conclude that the verdict of $600,000 is not excessive. The judgment of the trial court, therefore, is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON, and KENNEDY, JJ., concur.
NOTES
[1] In an article appearing in the Legal Times for the week of May 6, 1991, entitled More Damage for Punitive Damages, the following is stated regarding post-Haslip action by the Supreme Court of the United States:

"[T]he Court's holding in Pacific Mutual that the jury's `significant' discretion to punish did not violate due process was predicated in substantial part on the Court's perception of Alabama's `elaborate' and `refined' post-verdict procedures for scrutinizing punitive damage awards. Those procedures involved application by Alabama trial and appellate courts of seven `detailed substantive standards' and `objective criteria' to test the excessiveness of a punitive verdict. The Court concluded that such procedures provided a `sufficiently meaningful and definite constraint' on the discretion of Alabama juries for purposes of due process."