PARKER, Justice.
Complete Cash Holdings, LLC ("Complete Cash"), appeals a judgment entered by the Barbour Circuit Court on a jury verdict in favor of Lola Mae Powell.
Facts and Procedural History
This case arises out of Complete Cash's repossession of Powell's 2002 Chevrolet Avalanche truck based on a forged title-pawn agreement. Complete Cash lends money to consumers by the use of deferred-presentment agreements and vehicle title pawns. Complete Cash is also a pawnbroker, as that term is defined in Ala. Code 1975, § 5-19A-2(4), which states, in pertinent part:
"Any person engaged in the business of lending money on the security of pledged goods left in pawn, or in the business of purchasing tangible personal *552 property to be left in pawn on the condition that it may be redeemed or repurchased by the seller for a fixed price within a fixed period of time."
On October 1, 2011, Vakeela Brown, Powell's granddaughter, went to a Complete Cash storefront in Eufaula. Brown, without Powell's knowledge or permission, forged Powell's signature on two deferred-presentment agreements to borrow a total of $300 ($150 under each of the deferred-presentment agreements). Renata Green, an employee of Complete Cash and the manager of the Complete Cash store in Eufaula, signed the deferred-presentment agreements on behalf of Complete Cash. Under the terms of each of the deferred-presentment agreements, Complete Cash agreed to lend "Powell" $150 ($300 total) on October 1, 2011, and, in exchange, "Powell" agreed to present to Complete Cash two personal checks, each in the amount of $176.25 ($352.50 total), which Complete Cash would hold until the presentment date of October 31, 2011.[1] On the presentment date, Complete Cash would cash Powell's personal checks, which would satisfy "Powell's" obligation to Complete Cash. In order to satisfy this condition of the deferred-presentment agreements, Brown stole two personal checks from Powell and forged Powell's signature on those checks. Of course, Powell was not obligated to make repayment under the deferred-presentment agreements because it is undisputed that Brown forged Powell's signature on the deferred-presentment agreements and on the personal checks given to Complete Cash.
In addition to being the manager of the Complete Cash store, Green was also a friend of Brown's and knew Powell personally. Green knew that Brown had forged Powell's signature on the deferred-presentment agreements and on Powell's personal checks. Brown testified that, at some time thereafter, she and Green decided to pawn the title to Powell's truck and to split the money procured from pawning the title. As a result, Brown testified that she and Green stole the title to Powell's truck to pawn it.
On October 27, 2011, Brown went to the Complete Cash store and forged Powell's signature on an agreement with Complete Cash entitled "Alabama Pawn Ticket" ("the title-pawn agreement"). Green signed the title-pawn agreement on behalf of Complete Cash. Under the terms of the title-pawn agreement, Complete Cash agreed to lend "Powell" $2,352.50, and "Powell" agreed to give Complete Cash a security interest in the title to the truck as collateral securing the amount borrowed. ''Powell'' also agreed to repay the amount borrowed plus a "finance charge" of $294.06, for a total repayment of $2,646.56, on November 26, 2011.[2] The title-pawn agreement also permitted the repayment period to be extended for 30-day periods. The title-pawn agreement stated that the truck would become the property of Complete Cash if "Powell" failed to repay the amount owed under the terms of the title-pawn agreement.[3]
Brown testified that Green satisfied the deferred-presentment agreements using some of the money Brown and Green had procured under the title-pawn agreement.
*553 After the title-pawn agreement was executed, from October 27, 2011, until August 24, 2013, 19 payments were made on the title-pawn agreement totaling $2,133.75; the amount of the payments varied from $5 to $450. Ashley Newman, an employee of Complete Cash and Green's supervisor, testified that such a repayment history was not unusual for accounts held by Complete Cash. Brown testified that she "may have come in [to the Complete Cash store] and did [sic] one or two [of the payments], but the other[ payments] were made by [Green]." However, Green's employment with Complete Cash was terminated in August 2013 based on Green's failure to "collect a certain percentage a month." Newman testified that Green's employment was terminated because Green was "not doing her job." Newman further testified that the termination of Green's employment was not related to her fraudulent activity in regard to Powell; in fact, Newman testified that Complete Cash had no knowledge that Green had been engaged in any fraudulent activity at the time her employment was terminated. After Green's employment with Complete Cash was terminated, Green quit making payments on the title-pawn agreement; no payments were made on the title-pawn agreement after August 24, 2013.
On September 23, 2013, based on the fact that Powell had defaulted on the title-pawn agreement, Complete Cash sent its repossession agent, D&T Custom Automotive, LLC ("D&T"), a "repossession packet" requesting that D&T repossess Powell's truck.
On January 27, 2014, D&T repossessed Powell's truck. The same day, Jerome Anthony Rogers, Powell's nephew, drove Powell to the Complete Cash store to understand why Complete Cash had repossessed Powell's truck. Upon arriving at the Complete Cash store, Powell and Rogers spoke with April Scott, an employee of Complete Cash and the manager of the Complete Cash store who had been hired to replace Green. Scott agreed to speak with her supervisor about the matter.
Newman was Scott's supervisor. Newman testified that Scott spoke with her about Powell's account. Newman testified that, upon learning that Powell alleged that the title-pawn agreement had been created fraudulently, she thoroughly reviewed Powell's account. Newman testified that she found no signs of fraud with the title-pawn agreement. Specifically, Newman testified that the fact that Complete Cash actually had the title to Powell's truck naming Complete Cash as a lienholder and the payment history on the account indicated to her that the title-pawn agreement was not the result of fraudulent activity.
On February 18, 2014, Powell's counsel sent Complete Cash a letter demanding that Powell's truck be returned to Powell. In the demand letter, Powell's trial counsel informed Complete Cash that Powell's signature had been forged by Brown on the title-pawn agreement. Powell's trial counsel also requested that someone from Complete Cash contact him to discuss the matter further.
A few days after Powell's counsel sent the demand letter, Brandi Jackson, the manager of Complete Cash's legal department, telephoned Powell's counsel. Jackson testified that she informed Powell's counsel that Complete Cash had investigated Powell's account and determined that there was no fraudulent activity concerning the title-pawn agreement.
On February 27, 2014, Powell sued Complete Cash asserting claims of replevin, detinue, trespass to chattels, conversion, *554 negligence, and wantonness.[4] On June 4, 2014, Powell filed an amended complaint, adding D&T and Green as defendants and asserting numerous claims against Complete Cash, D&T, and Green. In addition to the claims Powell asserted against Complete Cash in her original complaint, Powell asserted that Complete Cash had violated the Alabama Pawnshop Act, § 5-19A-1 et seq., Ala. Code 1975, that Complete Cash had violated the Deceptive Trade Practices Act, § 8-19-1 et seq., Ala. Code 1975 ("the DTPA"), that Complete Cash had violated 15 U.S.C. § 1692f(6) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("the FDCPA"), and asserted claims of fraudulent suppression and civil conspiracy. Powell asserted against D&T and Green claims of conversion, negligence, wantonness, fraudulent suppression, and civil conspiracy.
On June 18, 2014, Complete Cash filed an answer to Powell's first amended complaint, cross-claims against Green, and a third-party complaint against Brown.
On October 16, 2014, Complete Cash filed motions for default judgments against Brown and Green based on their failure to respond to the claims asserted against them by Complete Cash. On October 20, 2014, the trial court granted Complete Cash's motions for default judgments against Brown and Green but did not assess damages.
On July 17, 2015, Powell filed a motion for a summary judgment. On the same day, Complete Cash also filed a motion for a summary judgment or, in the alternative, for a partial summary judgment. On August 5, 2015, Complete Cash filed an amended motion for a summary judgment.
On August 17, 2015, just before the trial began, the trial court heard oral argument on the parties' summary-judgment motions. The trial court entered a summary judgment for Complete Cash on Powell's fraudulent-suppression and civil-conspiracy claims. The trial then commenced on the remaining claims against Complete Cash.[5]
At the close of Powell's case-in-chief, Complete Cash filed a motion for a judgment as a matter of law ("JML") as to Powell's remaining claims, challenging each claim with specificity. Concerning Powell's claim that Complete Cash had violated § 1692f(6), Complete Cash argued that the FDCPA did not apply because, it argued, Complete Cash was not a "debt collector" as that term is defined in the FDCPA. The trial court entered a JML for Complete Cash on Powell's claims of detinue, trespass, violation of the Alabama Pawnshop Act, and Powell's claim that Complete Cash had violated the DTPA; the trial court denied Complete Cash's motion as to all other claims, including the claim asserting a violation of the FDCPA. The case was then submitted to the jury. The jury returned a verdict in favor of Powell.
On September 15, 2015, the trial court entered the following judgment on the jury's verdict:
*555 "Issue having been joined, this matter came on for trial commencing on August 17, 2015 at the Barbour County Courthouse in Eufaula, Alabama. Thereupon came a jury of good and lawful citizens, to wit: Scotty Smith and eleven others, who being duly impaneled, sworn, and charged by the court according to law, before whom the trial of this cause was entered upon and continued from day to day and from time to time, and upon the 18th day of August, 2015, said jurors upon their oath did say:
" 'We, the Jury, find in favor of the Plaintiff, Lola Mae Powell, and against the Defendants, Complete Cash, LLC, et al[.], and assess damages as follows: Compensatory damages: Fifty Thousand Dollars ($50,000.00) Punitive damages: One Hundred Fifty Thousand Dollars ($150,000.00).'
"SPECIAL INTERROGATORY
" '1. Is the jury reasonably satisfied from the evidence in this case that the Defendant, Complete Cash, is a debt collector as defined by the Fair Debt Collection Practices Act and took non-judicial action to effect dispossession or disablement of property when there was no present right to possession of the property?
" 'Check One ---- Yes ---- No (The 'Yes' boxed was checked on the verdict form by the jury foreman.)'
"Therefore, judgment is entered in favor of the Plaintiff, Lola Mae Powell."
On September 17, 2015, Complete Cash filed a renewed motion for a JML or, in the alternative, for a new trial. Complete Cash adopted the arguments it had asserted in its original motion for a JML as to those claims submitted to the jury. Complete Cash did provide additional analysis of its argument that the FDCPA did not apply because, it argued, Complete Cash was not a "debt collector" as that term is defined in the FDCPA. Complete Cash further argued that, if the trial court found convincing Complete Cash's argument that the FDCPA did not apply, the judgment entered on the jury's general verdict had to be reversed because a "bad count" had been submitted to the jury.
On January 13, 2016, the trial court entered an order denying Complete Cash's renewed motion for a JML or for a new trial and assessing damages against Brown and Green. The trial court's order stated that Brown and Green "are hereby jointly and severely [sic] liable for the damages assessed [against Complete Cash] by the jury."
On February 3, 2016, Powell filed an "application for assessment of fees and costs" requesting attorney fees in the amount of $114,480 and costs in the amount of $3,114.56, which the trial court granted. On February 19, 2016, Complete Cash filed its notice of appeal.[6]
*556 Standard of Review
"We review as follows a trial court's ruling on a motion for a JML made after a verdict has been returned:
" 'The standard of review applicable to a ruling on a [renewed] motion for [a JML] is identical to the standard used by the trial court in granting or denying a motion for [a JML]. Thus, in reviewing the trial court's ruling on the motion, we review the evidence in the light most favorable to the nonmovant, and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination.
" '....
" '... In ruling on a [renewed] motion for a [JML], the trial court is called upon to determine whether the evidence was sufficient to submit a question of fact to the jury; for the court to determine that it was, there must have been "substantial evidence" before the jury to create a question of fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' "
" American Nat'l Fire Ins. Co. v. Hughes, 624 So.2d 1362, 1366-67 (Ala. 1993) (citations omitted)."
Lee v. Houser, 148 So.3d 406, 414 (Ala. 2013).
Discussion
Complete Cash argues that the trial court erred in denying its renewed motion for a JML as to Powell's claim that Complete Cash violated § 1692f(6) of the FDCPA. Complete Cash argues that the FDCPA does not apply because, it argues, Complete Cash is not a "debt collector" as that term is defined under the FDCPA. The United States Court of Appeals for the Eleventh Circuit stated the following concerning the definition of "debt collector" under the FDCPA for purposes of a claim brought under § 1692f(6) :
"The FDCPA imposes liability on 'debt collectors' who fail to comply with its provisions when collecting a 'debt.' 15 U.S.C. § 1692k. The FDCPA's restrictions apply only to 'debt collectors.' ... A 'debt collector' is defined, for the purposes of § 1692f(6), as 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts [or the enforcement of security interests], or who regularly collects or attempts to collect ... debts [owed or due or asserted to be owed or] due another....' Id. § 1692a(6); see Harris v. Liberty Cmty. Mgmt., Inc., 702 F.3d 1298, 1302 (11th Cir. 2012)."
Lodge v. Kondaur Capital Corp., 750 F.3d 1263, 1273 (11th Cir. 2014) (first bracketed language in original). See also Davidson v. Capital One Bank (USA), N.A., 797 F.3d 1309, 1313 (11th Cir. 2015) (noting that the definitions of "debt collector" set forth in 15 U.S.C. § 1692a(6) are alternative).
Complete Cash argues that it does not satisfy either definition of "debt collector" in 15 U.S.C. § 1692a(6) because, it says, its principal purpose of business is not the collection of debts or the enforcement of security interests and because Complete Cash does not collect debts owed to third party or enforce security interests *557 held by a third party.[7] Instead, Complete Cash argues that the parties stipulated to the fact that "Complete Cash is in the business of lending money to consumers by way of deferred presentment agreements and title pawns." Complete Cash's brief, at pp. 27-28. Essentially, Complete Cash is arguing that it is a "creditor" under the FDCPA, not a debt collector.[8] Complete Cash is correct.
In Davidson, the Eleventh Circuit stated that, "[u]nlike debt collectors, creditors typically are not subject to the FDCPA. See, e.g., Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000). A 'creditor' is 'any person who offers or extends credit creating a debt or to whom a debt is owed.' [ 15 U.S.C.] § 1692a(4)." 797 F.3d at 1313. In Pollice v. National Tax Funding, L.P., 225 F.3d 379 (3d Cir. 2000), the case relied upon by the Eleventh Circuit in Davidson, the United States Court of Appeals for the Third Circuit stated:
"The FDCPA's provisions generally apply only to 'debt collectors.' Pettit v. Retrieval Masters Creditors Bureau, Inc., 211 F.3d 1057, 1059 (7th Cir. 2000). Creditors-as opposed to 'debt collectors'-generally are not subject to the FDCPA. See Aubert v. American Gen. Fin., Inc., 137 F.3d 976, 978 (7th Cir. 1998) ('Creditors who collect in their own name and whose principal business is not debt collection ... are not subject *558 to the [FDCPA].... Because creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill, their debt collection activities are not subject to the [FDCPA] unless they collect under a name other than their own.'); Staub [ v. Harris ], 626 F.2d [275,] 277 [ (3d Cir. 1980) ] ('The [FDCPA] does not apply to persons or businesses collecting debts on their own behalf.'); Hon. D. Duff McKee, Liability of Debt Collector to Debtor under the Federal Fair Debt Collection Practices Act, 41 Am. Jur. Proof of Facts 3d 159, at § 3 (1997) ... ('[I]nterestingly, the term "debt collector" does not include the creditor collecting its own debt.')."
225 F.3d at 403. In Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985), the United States Court of Appeals for the Fifth Circuit stated the above proposition even more definitively: "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors.... See S. Rep. No. 95-382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S. Code Cong. & Ad. News 1695, 1698." See also Montgomery v. Huntington Bank, 346 F.3d 693, 698 (6th Cir. 2003) (quoting Perry with approval for the same proposition); Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106 (6th Cir. 1996) (same); and McCrimmon v. Mariner Fin. North Carolina, Inc., 154 F.Supp.3d 256, 258 (M.D.N.C. 2016) (" '[C]rediting institutions, such as banks, are not debt collectors under section 1692a(6)(A) because they collect their own debts and are in the business of lending money to consumers.' Davis v. Dillard Nat'l Bank, No. 1:02-cv-546 (M.D.N.C. June 4, 2003) (unpublished)." (citing Thomasson v. Bank One, Louisiana, N.A., 137 F.Supp.2d 721, 724 (E.D. La. 2001), and Meads v. Citicorp Credit Servs., Inc., 686 F.Supp. 330, 333 (S.D. Ga. 1988) )).
Complete Cash is a "creditor" under the FDCPA because it "offers or extends credit creating a debt." 15 U.S.C. § 1692a(4). Complete Cash's business is to extend credit to borrowers, which places those borrowers in debt. Complete Cash is Powell's creditor.[9] Powell put on extensive evidence proving this fact. Further, Complete Cash collects its own debts and enforces its own security interests; Powell has not presented any evidence indicating that Complete Cash collects debt owed to others, enforces security interests held by others, or collects its own debt in a name other than its own.
Powell has offered no argument opposing Complete Cash's position that it is a creditor under § 1692a(4) of the FDCPA. Instead, Powell argues that,
"[w]hile an original creditor is generally not considered a debt collector per the FDCPA, there are instances in which an original creditor may still be liable as a debt collector under the FDCPA, if the creditor is shown to be in violation of the FDCPA, 15 U.S.C. § 1692f(6) as to enforcement of security interests."
Powell's brief, at p. 25. However, Powell has not cited any authority in support of her argument that a creditor may nevertheless be liable as a debt collector under the FDCPA "as to the enforcement of security interests." In order for a party to be liable under the FDCPA it must be *559 demonstrated that the party is a debt collector under § 1692a(6). Powell has failed to demonstrate that Complete Cash is a debt collector. Further, after extensive research, we have not found any authority with similar facts explaining an instance where a creditor, like Complete Cash, has been held liable as a debt collector.
Viewing the facts in a light most favorable to Powell, as we must, we conclude that there is no evidence, let alone substantial evidence, indicating that Complete Cash is a debt collector under the FDCPA. Instead, the evidence establishes that Complete Cash is a creditor. Thus, as Powell's creditor, Complete Cash is not included within the definition of "debt collector" in the FDCPA. In Birster v. American Home Mortgage Servicing, Inc., 481 F.App'x. 579, 582 (11th Cir. 2012) (not selected for publication in the Federal Reporter ), a case relied upon by Powell, a panel of the Eleventh Circuit stated: "[W]hether an individual or entity is a 'debt collector' is determinative of liability under the FDCPA." The evidence is conclusive that Complete Cash is Powell's creditor, not a debt collector, which determines the issue of liability. Based on the foregoing, we conclude that the trial court erred in denying Complete Cash's renewed motion for a JML as to Powell's claim that Complete Cash violated 15 U.S.C. § 1692f(6).
Next, Complete Cash argues that "[t]he entire jury verdict is improper since the 'bad' count regarding the FDCPA went to the jury, and the jury found in favor of Powell by a general verdict." Complete Cash's brief, at p. 32. Complete Cash notes that, in answering the special interrogatory on the jury's verdict form in the affirmative, the jury expressly concluded that Complete Cash is a debt collector under the FDCPA. This demonstrates, Complete Cash argues, that the jury's verdict was based, at least in part, on Powell's claim that Complete Cash violated § 1692f(6), which, Complete Cash argues, is a "bad count" in that it is not supported by substantial evidence. Complete Cash is correct.
In Larrimore v. Dubose, 827 So.2d 60, 62-63 (Ala. 2001), this Court set forth the following applicable law concerning a "good count/bad count" situation, like that presented in this case:
"In Aspinwall v. Gowens, 405 So.2d 134, 138 (Ala. 1981) (opinion on rehearing), this Court stated:
" 'On reconsideration, we believe the better view to be that if a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of these counts, he must challenge this by motion for [JML], specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence. If this is not done and all counts go to the jury and a general verdict is returned, the court will presume that the verdict was returned on a valid count.'
"Furthermore, in Alfa Mutual Insurance Co. v. Roush, 723 So.2d 1250, 1257 (Ala. 1998), this Court stated what occurs when a properly presented motion for a JML preserves a challenge to a 'bad count':
" 'When a jury returns a general verdict upon two or more claims, as it did here, it is not possible for this Court to determine which of the claims the jury found to be meritorious. Therefore, when the trial court submits to the jury a "good count"-one that is supported by the evidence-and a "bad count"-one that is not supported by the evidence-and the jury returns a general verdict, this Court *560 cannot presume that the verdict was returned on the good count. In such a case, a judgment entered upon the verdict must be reversed.'
"See also Ex parte Grand Manor, Inc., 778 So.2d 173 (Ala. 2000) ; St. Clair Fed. Sav. Bank v. Rozelle, 653 So.2d 986 (Ala. 1995) ; and South Cent. Bell Tel. Co. v. Branum, 568 So.2d 795 (Ala. 1990)."
Powell argues that Complete Cash failed to adequately challenge in its motions for a JML, as required by Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981), Powell's claim that Complete Cash violated § 1692f(6). Powell's argument is not persuasive. Complete Cash moved for a JML at the close of Powell's case, which coincided with the close of all the evidence. Complete Cash argued that it was entitled to a JML on all of Powell's claims. With regard to Powell's claim that Complete Cash violated § 1692f(6), Complete Cash specifically argued that the FDCPA did not apply because Complete Cash was not a debt collector. Although the trial court granted Complete Cash's motions for a JML as to some of Powell's claims against Complete Cash, the trial court allowed the remainder of the claims, including Powell's claim under the FDCPA, to be submitted to the jury. The jury then returned a general verdict for Powell, awarding her compensatory damages and punitive damages. The jury's verdict was general, but it also included a special interrogatory indicating that the jury specifically found that Complete Cash was a debt collector under the FDCPA. After the trial court entered a judgment on the jury's verdict, Complete Cash, in a renewed motion for a JML, renewed its arguments that there was insufficient evidence from which to conclude that Complete Cash was a debt collector under the FDCPA. Based on these facts, we conclude that Complete Cash adequately challenged Powell's FDCPA claim under Aspinwall.
We also conclude, based on the jury's express finding that Complete Cash was a debt collector under the FDCPA, that the jury's award of compensatory damages was based, at least in part, on Powell's claim that Complete Cash had violated § 1692f(6). Accordingly, there is no question that the jury's verdict was based on a "bad count." Of course, because the FDCPA does not provide for the award of punitive damages, we can also safely assume that the jury's verdict was based in part on Powell's claims of conversion or wantonness.[10] This, however, does not save the jury's verdict because we know, based on the special interrogatory, that the jury based its general verdict in part on a bad count. For this reason, we must reverse the entirety of the compensatory-damages award.
Further, our reversal of the jury's compensatory-damages award mandates that we also reverse the jury's punitive-damages award. This Court stated in Ex parte Third Generation, Inc., 855 So.2d 489, 491 (Ala. 2003), "that in order to be consistent with due process, 'a jury's verdict [must] specifically award either compensatory damages or nominal damages in order for an award of punitive damages to be upheld.' [ Life Ins. Co. of Georgia v. Smith,] 719 So.2d [797,] 806 [ (Ala. 1998) ] (citing BMW of North America v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) )." See also Jenelle Mims Marsh, Alabama Law of Damages § 4:1 (6th ed. 2012) ("There also must be a finding by the *561 jury of either compensatory or nominal damages before an award of punitive damages will be upheld."). The jury's compensatory-damages award having been reversed, there is no basis upon which the jury's punitive-damages award may be upheld. Therefore, the trial court's judgment must be reversed in its entirety and the cause remanded for a new trial. Because we are reversing on this issue, we pretermit consideration of all other issues raised on appeal.
REVERSED AND REMANDED.
Stuart, Shaw, Main, and Wise, JJ., concur.

The $176.25 payment represented $150 in principal and $26.25 in interest. The annual percentage rate on the loans under the deferred-presentment agreements was 212.92%.

The annual percentage rate on the loan under the title-pawn agreement was 150%.

Brown also forged Powell's signature on all the necessary paperwork for Complete Cash to legally obtain and record its security interest in Powell's truck.

Powell also filed, contemporaneously with her complaint, an "ex parte motion for emergency preliminary relief or temporary restraining order" in which Powell requested immediate possession of her truck during the pendency of the lawsuit. On March 3, 2014, the trial court granted Powell's request for immediate possession of the truck. The trial court later converted its order to a preliminary injunction. Pursuant to the trial court's order, Complete Cash returned the truck to Powell on March 14, 2014. On June 19, 2014, Powell "received the vehicle title [to her truck] from Complete Cash."

On August 15, 2015, Powell and D&T filed a joint stipulation dismissing D&T as a party, which the trial court granted.

We note that the issue of costs and attorney fees remained pending when Complete Cash filed its notice of appeal. In Wolfe v. JPMorgan Chase Bank, N.A., 142 So.3d 697, 698-99 (Ala. Civ. App. 2013), the Court of Civil Appeals stated:
" '[A] decision on the merits' of the claims asserted by the parties is a " 'final decision' " even when 'there remains for adjudication a request for attorney's fees attributable to the case.' Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202-03, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) ; see also In re Porto, 645 F.3d 1294, 1299 (11th Cir. 2011) ('[T]he Supreme Court has established a bright line rule that the issue of attorney's fees is always collateral to the merits, and a decision on the merits, even if the attorney's fees issue remains unresolved, is immediately appealable....'); and State Bd. of Educ. v. Waldrop, 840 So.2d 893, 899 (Ala. 2002) ('[A] decision on the merits disposing of all claims is a final decision from which an appeal must be timely taken, whether a request for attorney fees remains for adjudication.')."
(Footnote omitted.)

Powell argues that Complete Cash has waived any argument pertaining to her claim asserted under the FDCPA because Complete Cash did not object to the trial court's jury instruction on Powell's FDCPA claim or to the inclusion of the special interrogatory on the jury's verdict form. Powell relies only upon Cochran v. Ward, 935 So.2d 1169 (Ala. 2006), in making this argument. The portion of Cochran relied upon by Powell concerns the preservation for appellate review of an alleged error in a verdict form submitted to the jury in that case. This Court held that, under Rule 51, Ala. R. Civ. P., a party must state the matter objected to and the grounds of the objection in order to preserve any alleged errors for appellate review. However, in the present case, Complete Cash has not alleged that there was error in the trial court's jury instructions or verdict form. Instead, Complete Cash argues that it was entitled to a JML under Rule 50, Ala. R. Civ. P. "To preserve its argument, [Complete Cash] was required to follow the mandates of Rule 50, Ala. R. Civ. P., which governs a JML. Contrary to [Powell's] contention, preservation of [Complete Cash's] argument does not require following the mandates of Rule 51, Ala. R. Civ. P., which governs objections to jury instructions." Cook's Pest Control, Inc. v. Rebar, 28 So.3d 716, 722 (Ala. 2009). This Court specifically stated in Cook's that it is not necessary for purposes of preservation for a party seeking to appeal a trial court's denial of that party's motion for a JML "to object to the trial court's jury instructions on the same grounds as set forth in its motions for a JML." 28 So.3d at 723. Complete Cash did not waive any argument concerning Powell's FDCPA claim. As Complete Cash explains in its reply brief, Complete Cash filed a motion for a JML concerning Powell's FDCPA claim, but the trial court denied Complete Cash's motion. Complete Cash states that it did, indeed, agree to the special interrogatory because "it was important for Complete Cash to understand how significant that claim was, and whether the jury's general verdict was due to a finding that Complete Cash is a debt collector as defined by the FDCPA." Complete Cash's reply brief, at p. 7. Throughout the course of these proceedings, Complete Cash has maintained the consistent position that it is entitled to a JML as to Powell's claim that Complete Cash violated § 1692f(6). Based on the above-quoted portions of Cook's, we conclude that Complete Cash did not waive any argument concerning this issue by not objecting to the trial court's jury instruction on the FDCPA or by agreeing to have the special interrogatory included on the jury's verdict form.

As set forth above, the term "debt collector" is a statutorily defined term. Section 1692a(6) includes within the definition of "debt collector" one whose primary business is the collection of debts and/or the enforcement of security interests. Any reference throughout this opinion to the term "debt collector" contemplates one who enforces security interests.

Of course, we recognize that the contract establishing the relationship between Powell and Complete Cash was fraudulently created; Complete Cash makes no assertion that Powell is liable under the title-pawn agreement. We state that Complete Cash is Powell's creditor solely for purposes of analyzing Powell's FDCPA claim, which requires us to look to the nature of Complete Cash's business and the relationship between Powell and Complete Cash.

We note that Complete Cash argues on appeal that the trial court erred in denying its renewed motion for a JML as to Powell's wantonness claim; however, as further explained below, we need not address this argument because we have already determined that the jury's general verdict was based on a bad count.