510 So.2d 142 (1987)
LYNN STRICKLAND SALES AND SERVICE, INC.
v.
AERO-LANE FABRICATORS, INC.
85-263.
Supreme Court of Alabama.
March 13, 1987.
Rehearing Denied June 26, 1987.
*143 Andrew P. Campbell and Jack W. Selden of Leitman, Siegal & Payne, Birmingham, for appellant.
James J. Bushnell, Jr. of Rives & Peterson, Birmingham, for appellee.
PER CURIAM.
Plaintiff Lynn Strickland Sales and Service, Inc. ("Strickland"), appeals from the trial court's judgment for defendant Aero-Lane Fabricators, Inc. ("Aero"), following a jury verdict in favor of Aero, and the Rule 59.1, Ala.R.Civ.P., denial by operation of law of Strickland's motion for a new trial. The appeal is also directed toward the court's directed verdict for Aero on Strickland's wantonness and willful misrepresentation claims.
The case was presented to the jury on two counts: negligence and "innocent fraud" (mistaken misrepresentation).[1] The jury heard the evidence over a three-day period and returned a general verdict in favor of Aero.
Strickland filed a motion for a new trial in which it asserted that the finding of the jury "is contrary to the great weight of the evidence." This motion was overruled by the trial court and thus the first issue is presented to us for review: Was the jury verdict contrary to the preponderance of *144 the evidence on the negligence and mistaken misrepresentation claims?
A jury verdict is presumed to be correct and will not be reversed unless the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it is wrong and unjust. Coleman v. Steel City Crane Rentals, Inc., 475 So.2d 498 (Ala.1985), cert. denied, Illinois C.G.R.R. v. Coleman, ___ U.S. ___, 106 S.Ct. 1946, 90 L.Ed.2d 356 (1986).
We have carefully reviewed the evidence and are not persuaded that the verdict on either the negligence or the mistaken misrepresentation claim is so decidedly against the preponderance of the evidence as to be wrong and unjust. Therefore, we reject Strickland's contention with respect to these claims.
The second issue is whether the trial court erred to reversal by improperly instructing the jury on damages. The case went to the jury on negligence and mistaken misrepresentation. Strickland alleged that the negligence proximately damaged Strickland's Rockwell Commander 114 aircraft.
Strickland's only objection to the instruction on damages was as follows: "We would also object to the instruction on fair market value. We believe it was overly broad and too demanding and did not follow the law ... in the State of Alabama."[2] The trial court instructed the jury on the measure of damages applicable to personal property, as follows:
"[T]he way you would determine damages to that personal property would be this: You should first of all determine the fair market value of the personal property immediately before the negligence and in its undamaged condition. It has a dollar value. Immediately after the negligence and the property is damaged, then determine the after or fair market value after that point and reach a decision on that point. The difference between these two figures would represent compensation for property damages.
"Now, what is fair market value? I think you are entitled to know that. Fair market value is the highest price estimated in terms of money which the property will bring if exposed for sale in the open market with a reasonable time allowed to find a purchaser, buying with knowledge of all the uses and purposes to which it is best adapted and ... which it is capable of being used for.
"Now, the question then you would have to ask yourself is this: What sum of money would a willing seller and willing buyer get together on the value of this airplane following the charges of negligence through the defendant? What sum of money would they get together for the sale of this airplane before the incident in question? The difference between those two would represent compensation."
The correct measure of compensation for damage to noncommercial personal property is the difference in the fair market value (Robbins v. Voigt, 280 Ala. 207, 191 So.2d 212 (1966)), or reasonable market value (Shackleford v. Brumley, 437 So.2d 1044 (Ala.Civ.App.1983)), immediately before and the corresponding value immediately after the damage occurs. The terms "fair market value" and "reasonable market value" are substantially synonymous. Housing Authority of Birmingham District v. Title Guarantee Loan & Trust Co., 243 Ala. 157, 8 So.2d 835 (1942).
We hold that the trial court's instruction on damages was not "overly broad" or "too demanding" and that the instruction was in accordance with the law of damages in Alabama. Robbins v. Voigt, supra.
The next issue is whether the trial court committed reversible error when it restricted the expert testimony of two of Strickland's witnesses, Alan C. Peine and Leroy Harris. Strickland did not disclose these individuals as experts to be used at trial, nor did it specify what opinions they had formulated, in response to Aero's Rule *145 26(b)(4), Ala.R.Civ.P., discovery request. Aero objected to their testimony as experts because of Strickland's failure to comply with Aero's discovery request. It was within the discretion of the trial court to restrict such testimony, and we find nothing to indicate that the trial court abused its discretion. Electrolux Motor AB v. Chancellor, 486 So.2d 414 (Ala.1986).
The final issue raised is whether the trial court erred to reversal in directing a verdict against Strickland on its claims for wantonness and willful misrepresentation.
Aero contends that any error committed by the trial court in directing a verdict in its favor on Strickland's wantonness claim at the close of all the evidence would be harmless error because the jury returned a verdict in favor of Aero on Strickland's negligence claim.[3] Particularly is this true, asserts Aero, where, as here, there was no affirmative defense which would be a defense to negligence but not to wantonness. See Chance v. Dallas County, 456 So.2d 295 (Ala.1984); and Burns v. Moore, 494 So.2d 4 (Ala.1986). We disagree.
Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. The element of intent, or knowledge, is not present in simple negligence, and the element of intent does not raise a person's conduct to merely a greater degree of negligence as, for instance, gross negligence. As the Court stated in Smith v. Roland, 243 Ala. 400, 403, 10 So.2d 367, 369 (1942), quoting 5 Mayfield's Digest, p. 711, § 6:
"`Gross negligence' is negligence, not wantonness. Before one can be convicted of wantonness, the facts must show that he was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct, that with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury."
Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act. "Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted." McNeil v. Munson S.S. Lines, 184 Ala. 420, 425, 63 So. 992 (1913). "Simple negligence, `the inadvertent omission of duty,' is not an element of wantonness." Atlantic Coast Line R.R. v. Barganier, 258 Ala. 94, 101, 61 So.2d 35 (1952).
The distinction between wantonness and negligence has a long history in our case law. In Sington v. Birmingham Ry., Light & Power Co., 200 Ala. 282, 284, 76 So. 48 (1917), the Court stated:
"An act or omission is simple negligence or a wanton or intentional wrong according to the absence or presence of the mental state of the person who did or omitted to do that which duty required in the premises, and, if the person intended to inflict the injury or did the act with a knowledge and consciousness that his doing of the act or omitting to act will likely result in injury to another, he is guilty of willful or wanton misconduct or omission, and is not guilty of simple negligence. McNeil v. Munson S.S. Lines, 184 Ala. 420, 63 South. 992, L. & N.R.R. Co. v. Smith, 163 Ala. 141, 150, 151, 50 South 241; B.R., L. & P. Co. v. Brown, 150 Ala. 327, 43 South. 342; A.G.S.R.R. Co. v. Smith, 191 Ala. 643, 68 South. 56; Ala. Cent. Ry. Co. v. Humphries, 169 Ala. 369, 53 South. 1013, among others."
*146 In a 1963 case, Thompson v. White, 274 Ala. 413, 420, 149 So.2d 797, the Court stated:
"Wantonness and negligence cannot exist in the same act or omission, for the reason that wanton or wilful misconduct implies mental action; whereas that fact is absent in mere negligence. Wantonness and negligence are hence necessarily distinct colorings of a wrong to another's injury. Louisville & Nashville R. Co. v. Smith, 163 Ala. 141, 150, 151, 50 So. 241."
In Coleman v. Hamilton Storage Co., 235 Ala. 553, 559, 180 So. 553 (1938), an action for personal injuries, the Court specifically held: "The fact that defendant's servant was not guilty of negligence would not preclude a finding by the jury that he was guilty of willful or wanton conduct." (Emphasis added.)
The definition of negligence is stated as follows in Black's Law Dictionary (5th ed. 1979):
"The term [`negligence'] refers only to that legal delinquency which results whenever a man fails to exhibit the care which he ought to exhibit, whether it be slight, ordinary, or great. It is characterized chiefly by inadvertence, thoughtlessness, inattention, and the like, while `wantonness' or `recklessness' is characterized by willfulness.
"...
"... [T]here is often no clear distinction at all between such conduct [`willful,' `wanton,' or `reckless'] and `gross' negligence, and the two have tended to merge and take on the same meaning, of an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care." (Emphasis added.)
This "difference in quality rather than in degree" is well recognized and firmly established by leading authorities on tort law. Restatement (Second) of Torts § 500 comment g (1965), provides, in part, that "[t]he difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind." (Emphasis added.)
In Prosser & Keeton on Torts (5th ed. 1984) at 212, it is stated:
"[Willful,' `wanton,' and `reckless' misconduct] have been grouped together as an aggravated form of negligence, differing in quality rather than in degree from ordinary lack of care." (Emphasis added.)
A clear-cut distinction is made between negligence and wantonness in Dooley's Modern Tort Law, § 4.22 (1982) at 117:
"Willful and wanton conduct has a well-defined meaning at law. It is sometimes expressed in terms of `reckless disregard of the safety of another.' Willful and wanton conduct should not be confused with negligence. It has been correctly stated that the two concepts are as `unmixable as oil and water.'" (Footnotes omitted.)
Again, the distinction is discussed in Speiser, Krause, and Gans, 3 The American Law of Torts, § 10.1 (1986) at 358:
"While such a tort [wanton misconduct] has been labeled `willful negligence,' `wanton and willful negligence,' `wanton and willful misconduct,' and even `gross negligence,' it is most accurately designated as `wanton and reckless misconduct.' As the Wyoming court puts it: While `ordinary' and `gross' negligence differ in degree `ordinary' negligence and `willful and wanton' misconduct differ in kind.... Willful and wanton misconduct, in the strict sense, is not negligence, since it involves intent rather than inadvertence, and is positive rather than negative. And a Missouri court has added the following: Willfulness or wantonness imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act, and strictly speaking, is not within the meaning of the term `negligence,' which conveys the idea of inadvertence, as distinguished from premeditation or formed intention." (Footnotes omitted.)
*147 To say that simple negligence is merely a lesser degree of wantonness is to say that one who commits a wanton act also, at the same time, commits a negligent act; or stated otherwise, that every wanton act necessarily includes negligence. As is clear from the above cited authorities, this is not so. A jury could find wanton misconduct on the part of an individual, even though it does not find that that individual's conduct was negligent.
The same rationale applies with equal force to the distinctions between mistaken misrepresentation and willful misrepresentation.
Because the trial court erred in directing a verdict for Aero on Strickland's claims of wantonness and willful misrepresentation, the judgment is reversed and this cause is remanded for a new trial. Further, because the claims of negligence and mistaken misrepresentation were adjudicated in Aero's favor, and because we find no error with respect thereto, we hold that the retrial of this cause shall be limited to the wantonness and willful misrepresentation claims. McMurray v. Johnson, 481 So.2d 887 (Ala.1985).
REVERSED AND REMANDED WITH INSTRUCTIONS.
JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and HOUSTON and STEAGALL, JJ., concur in part; dissent in part; and concur in the result in part.
MADDOX, J., dissents.
HOUSTON, Justice, concurring in part; dissenting in part; and concurring in the result in part:
I concur in the Court's opinion as to all issues except the negligence/wantonness issue as to which I dissent, and the mistaken misrepresentation/willful misrepresentation issue, as to which I concur in the result.
What is the nature of negligence? Alabama Pattern Jury Instructions: Civil, charge 28.01 (1974) states, "[N]egligence is the failure to do ..., or, the doing of something..." In this Court's cases, "Simple negligence is the inadvertent omission of duty," McNeil v. Munson S.S. Lines, 184 Ala. 420, at 423, 63 So. 992 (1913) (emphasis in original). Again, in Atlantic Coast Line R.R. v. Barganier, 258 Ala. 94, at 102, 61 So.2d 35, at 42 (1952), this Court defined "simple negligence," as "the inadvertent omission of duty." (Emphasis added.) In McNeil v. Munson S.S. Lines, supra, after negligence had been defined as the inadvertent omission of duty, the following observation was made: "[A]n act or omission may be simple negligence, or wanton or willful wrong, according to the presence or absence of the mental state of the person who did or omitted to do that which duty required in the premises." (Emphasis added.) There is a long line of cases, which are cited in the per curiam opinion, that support this latter proposition of law. Webster's Third New International Dictionary defines "inadvertent" as "not turning the mind to a matter."
If our pattern jury instruction is correct and if our cases are correct which hold that a plaintiff need not show the presence or absence of the mental state of the person who did or omitted to do that which duty required, then I would hold that where there is no affirmative defense involved, as there is not in this case; when the same action or inaction is relied upon to support a wantonness count that is relied upon to support a negligence count; and when there is a verdict for the defendant on the negligence count, this Court should infer that since the same action or inaction is an essential part of the wantonness count, the jury would have found for the defendant on the wantonness count as it did on the negligence count. Therefore, I would hold that any error in directing a verdict in favor of the defendant on the wantonness count would be harmless error, which would not require a reversal.
However, if negligence requires a state of mind different from the state of mind required for wantonness, then this would not be correct, because the jury, in finding for the defendant, could find the absence of *148 that particular state of mind required for an act or omission to be "negligence."
What is the nature of negligence? Is negligence conduct or is negligence conduct accompanied by indifference or inadvertence? The titans of torts have fought over this issue for generations. This Court must be consistent in its approach and not have negligence as mere conduct for some purposes, e.g., instructions on negligence, and as conduct accompanied by indifference or inadvertence for other purposes, such as in this case.
There is a view, a generally accepted view, which I would adopt, that negligence is conduct conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. Holmes, The Common Law 110 (1881); Restatement (Second) of Torts §§ 430-431 (1965); Pollock, Torts 350 (4th ed. 1939); Beven, Negligence 3 (4th ed. 1928); 2 Harper and James, The Law of Torts 896 (1956); Terry, Negligence, 29 Harv.L.Rev. 40 (1915); Edgerton, "Negligence, Inadvertence and Indifference," 39 Harv.L.Rev. 849 (1926); Alabama Pattern Jury Instructions: Civil 28.01 (1974) ("`[N]egligence' is the failure to do ..., or the doing of something"); 57 Am.Jur.2d 351, Negligence § 10 (1971) ("The wrong lies in the conduct of the person charged and the liability imposed is an incident of his act or omission to act").
Under this theory, unreasonably dangerous conduct is negligence, without any requirement that it be accompanied by any particular state of mind, and no particular state of mind needs to be proven by the plaintiff to recover on a cause of action for negligence.
Professor Edgerton in "Negligence, Inadvertence, and Indifference," 39 Har.L. Rev. 849, 867 (1926), wrote: "By imposing liability for the consequences of dangerous conduct, and of dangerous conduct only, the law of negligence discourages such conduct, and thereby protects the general security, with a minimum of interference with individual freedom of action."
If negligence is conduct, then it naturally follows that that conduct for which liability is avoided by the contributory negligence doctrine and the guest passenger doctrine and which permits the imposition of punitive damages is wanton negligence or willful negligence, which would be conduct done with the particular mens rea necessary to make it wanton or willful.
There is another view, which has strong support and which the majority adopts and contends is the established law in Alabama; and certainly as of the release of this opinion, this is the law. According to it, negligence involves the state of mind of indifference or inadvertence. Conduct is not negligent unless it is accompanied by indifference or inadvertence. Salmond, Jurisprudence 538 (9th ed. 1937); Wharton, Negligence § 3 (2d ed. 1878); Street, Personal Injuries in Texas § 34 (1911); Winfield, Law of Tort 436 (2d ed. 1943); 57 Am. Jur.2d 350, Negligence § 10 ("Negligence, as the term is used in the law, is, under the modern rule, a wrong which constitutes a ground of legal liability, even though the fault upon which it is predicated is attributable to imprudence or to lack of skill rather than conscious design to do wrong").
Professor Edgerton postulates that this second theory is an outgrowth "of the nineteenth-century attempt to Romanize the common law by making all liability rest, not simply and directly upon the social advantage of discouraging certain conduct and compensating certain harms, but upon a guilty mind or will. `The wilful wrongdoer' says Salmond, `is he who desires to do harm; the negligent wrongdoer is he who does not sufficiently desire to avoid doing it;' and `negligence ... is rightly treated as a form of mens rea standing side by side with wrongful intention as a formal ground of responsibility.'" 39 Harv.L.Rev. at 869.
Under the state-of-mind theory, there could never be such a thing as "wanton negligence," for this would be wanton inadvertent or indifferent conduct; nor could there be such a thing as willful negligence, for this would be willful inadvertent or indifferent conduct. Such concepts would be contradictions.
*149 Dean Thayer in "Public Wrong and Private Action," 27 Harv.L.Rev. 317 (1914), at 317-318, wrote: "Much of the confusion in the cases has come from obscurity as to fundamental conceptions of the law of negligence.... Today some things can to advantage be reexamined and restated.... The very breadth of the subject [negligence] has made it easy to hide confusion of thought behind ambiguous and question-begging phrases."
Certainly "some things can to advantage be reexamined and restated," for we have opinions which would be authority for both views. See, McNeil v. Munson S.S. Lines, supra: "Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted. The conceptions are essentially distinct, for an act or omission may be simple negligence, or wanton or willful wrong, according to the presence or absence of the mental state of the person who did or omitted to do that which duty required in the premises." 184 Ala. at 423, 63 So. at 993. (Emphasis supplied.)
Since I view negligence as conduct, I would hold that the same action or inaction which constitutes negligence also constitutes wantonness if the tort feasor is conscious of his inaction or action and is conscious that by such inaction or action injury will likely or probably result.
I would also affirm the judgment of the trial court and hold that where there is no affirmative defense, such as contributory negligence, and a jury finds for a defendant on a negligence count, this Court will infer that the jury found the absence of that conduct. In this case, since the same facts that supported the negligence count were relied on by Strickland to support the wantonness count, this Court should infer that if the wantonness count had been presented to the jury, the jury would have found for Aero on that count, as it did on the negligence count. Therefore, any error in directing a verdict in favor of Aero on the wantonness count was harmless error, which would not require a reversal.
Under the majority's view, a plaintiff must prove that a defendant's conduct was inadvertent or indifferent. Can a defendant now defend on the fact that his conduct was not caused by indifference or inadvertence, but ignorance, stupidity, bad judgment, timidity, excitability, or forgetfulness? Is a defendant entitled to a directed verdict if there is no evidence of inadvertence or indifference? Is our pattern jury instruction on negligence erroneous?
The jury found for Aero on Strickland's mistaken misrepresentation count. Strickland argues that the trial court erred to reversal in directing a verdict for Aero at the close of all the evidence on Strickland's counts alleging willful misrepresentation and reckless misrepresentation. Aero insists that when the same facts are relied upon to support counts alleging mistaken, reckless, and willful misrepresentation, and only the mistaken misrepresentation count is submitted to the jury, as here, a verdict for the defendant on that count renders the directing of a verdict on the reckless and willful misrepresentation counts harmless error, even if there is a scintilla of evidence that the representation was made recklessly or willfully.
All three of Strickland's misrepresentation counts were predicated upon Aero's completion of a yellow maintenance release tag in accordance with FAA requirements, after repairing a muffler for Strickland's plane. Regardless of whether the representations made by Aero in completing this yellow maintenance tag were made mistakenly, recklessly, or willfully, in order for there to be actionable fraud (1) there must be a false representation; (2) the false representation must concern a material existing fact; (3) the plaintiff must rely upon that false representation; and (4) the plaintiff must be damaged as a proximate result of such reliance. Cotton States Mutual Insurance Co. v. Thigpen, 448 So.2d 314 (Ala.1983). To recover compensatory damages, the plaintiff need only present a scintilla of evidence as to each of the foregoing elements. In other words, the plaintiff need only establish actionable fraud. Mahoney v. Forsman, 437 So.2d 1030 (Ala. *150 1983); Ex parte Smith, 412 So.2d 1222 (Ala.1982); Fidelity & Casualty Co. of New York v. J.D. Pittman Tractor Co., 244 Ala. 354, 13 So.2d 669 (1943); Cartwright v. Braly, 218 Ala. 49, 117 So. 477 (1928); Foster v. Kennedy's Adm'r, 38 Ala. 359, 81 Am.Dec. 56 (1862).
To recover punitive damages, the plaintiff must present, in addition to the four elements essential for actionable fraud, evidence (under our existing cases, only a scintilla of evidence) that the representation was either made recklessly and heedlessly without any regard to the consequences, Ex parte Smith, supra; Winn-Dixie Montgomery, Inc. v. Henderson, 395 So.2d 475 (Ala.1981), or with the knowledge or belief on the part of the defendant that the representation was false, Ex parte Smith, supra; Kaye v. Pawnee Construction Co., 680 F.2d 1360 (11th Cir.1982). See also Ollie R. Blan and J. Mark Hart, Fraud in Insurance Contract LitigationA Defense Viewpoint, 16 Cum.L. Rev. 447, 449 (1986) ("The question of whether the misrepresentation is made willfully, recklessly without regard to its truth or falsity; or whether it is made innocently, or by mistake, is pertinent only to the issue of punitive damages").
As can be seen, where the alleged misrepresentation consists of the same facts (completion of a maintenance release tag), reckless and willful misrepresentations are merely higher in degree of culpability. In other words, each requires only an additional "scienter" element. Therefore, if the jury is instructed only on the four elements essential for actionable fraud and a verdict for the defendant is returned, the directing of a verdict on reckless and/or willful misrepresentation counts would be harmless error even if there is a scintilla of evidence supporting those counts. However, in this case the jury was instructed as follows:
"Now, the second charge or second complaint on account of the complaint is a fraud claim [sic]. Now, I'm going to take that up with you at this time and say to you this: That under our law, it is not in the State of Alabama, and I think it's generally nation-wide, but our law has stated in the Code of Alabama Civil Practice, and I'm going to give you a section number, number 6-5-101. That doesn't mean anything to the jury, but it says this: Misrepresentations of a material fact made by mistake and innocently and acted on by the opposite party constitute legal fraud.
"The charge is made by the plaintiff in a count of the complaint that there was a misrepresentation of a material fact that they were induced to act upon and they [did] act upon in relying upon the statement by the defendant and that as a direct result thereof, they were injured and damaged.
"So, if you are reasonably satisfied from the evidence in the case that the defendant innocently or by mistake representedmisrepresented a material fact to the plaintiff, thereby inducing action by the plaintiff to their injury, then the defendant would be guilty of legal fraud.
"The burden of proof required of the plaintiff to recover under this set of circumstances would be these: This is what would be necessary for the plaintiff to prove to your reasonable satisfaction. One, that there was an innocent or mistaken misrepresentation; two, that it concerned an existing material fact; three, it was made by the defendant with the intent to induce the plaintiff to act; four, the plaintiff relied upon the misrepresentation; and five, there was damages proximately caused or indirectly [sic] resulting to the plaintiff. Those are the elements that would be necessary to be proven by the plaintiff to your reasonable satisfaction in order to recover a judgment against the defendants on the basis of fraud." (Emphasis added.)
This instruction was apparently taken directly from the Alabama Pattern Jury Instructions: Civil, Charge 18.03 "Fraud" (1974). However, this instruction is misleading in that it purports to require a plaintiff to prove a misrepresentation to be "innocent or mistaken" in order to recover for actionable fraud. This is not the case. Once the four elements essential for actionable fraud are proven, at least a mistaken misrepresentation is established. Therefore, *151 for purposes of clarity, the instruction should read as follows:
"If you are reasonably satisfied from the evidence that the defendant misrepresented a material fact to the plaintiff, thereby inducing action by the plaintiff to his injury, then the defendant would be guilty of legal fraud."
Because the jury was incorrectly instructed that it could not return a verdict for Strickland unless it found an additional element (that Aero acted "innocently" or by "mistake"), it cannot be inferred that Strickland failed to prove to the jury's satisfaction one or more of the four essential elements of actionable fraud. Therefore, we could not hold as a matter of law that the directing of a verdict on the reckless and willful misrepresentation counts was harmless error because the four essential elements of actionable fraud could have been proven to the jury's satisfaction and if so, its verdict could mean only that Aero was not guilty of an "innocent" or "mistaken" misrepresentation.
TORBERT, C.J., and STEAGALL, J., concur.
MADDOX, Justice (dissenting).
I am of the opinion that the judgment of the trial court is due to be affirmed. Any error committed by the trial court, in my opinion, would be harmless error. Rule 45, Ala.R.App.P. Consequently, I cannot agree that the trial court's judgment is due to be reversed on either the negligence/wantonness issue or on the mistaken misrepresentation/willful misrepresentation issue. The whole concept behind our new Alabama Rules of Civil Procedure and our Alabama Rules of Appellate Procedure is that cases are decided upon their merits as justly, speedily, and inexpensively as possible. Rule 1, Ala.R.Civ.P.; Rule 1, Ala. R.App.P. To order a retrial of this case, in my judgment, violates the spirit behind both of those rules; therefore, I must respectfully dissent.
NOTES
[1] "Innocent fraud" is an oxymoronic term. The American Heritage Dictionary of the English Language (1969) defines "innocent" as "uncorrupted by evil, malice, or wrongdoing, sinless; untainted; pure." The same dictionary defines "fraud" as "a deception deliberately practiced in order to secure unfair or unlawful gain; a piece of trickery; a swindle." Because Code 1975, § 6-5-101, defines one species of fraud as a misrepresentation "made by mistake, and innocently," it is preferable to speak in terms of "mistaken misrepresentation" or "legal fraud."
[2] No claim for damages to a commercial vehicle was made by Strickland. The measure of damages in such cases is set out in Dean v. Johnston, 281 Ala. 602, 606, 206 So.2d 610, 614 (1968); Rowell v. Treadwell Ford, Inc., 511 F.2d 164 (5th Cir.1975).
[3] By so contending, Aero does not concede that the trial court erred in directing a verdict as to either the wantonness or the willful misrepresentation claim. We address the harmless error issue because we are of the opinion that Strickland was clearly entitled to have these claims submitted to the jury.