**Mahlon Daniel BROWDER, Jr., Plaintiff,**

v.

**GENERAL MOTORS CORPORATION; State Farm Mutual Automobile Insurance Company, Defendants.**

**No. Civ.A. 96–D–789–N.**

United States District Court, M.D. Alabama, Northern Division.

Nov. 24, 1997.

August 21, 1997 (doc. no. 25), at 2.

James H. Tipler, Andalusia, AL, Mal Stanley Duncah, Atlanta, GA, Mark J. Christensen, Andalusia, AL, Susan S. DePaola, Montgomery, AL, for plaintiff.

D. Alan Thomas, Gregory Schuck, Birmingham, AL, R. Chris Harvey, Kurt Meaders, Dallas, TX, Gary L. Weaver, Andalusia, AL, R. Todd Derrick, Herman W. Cobb, Dothan, AL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court are is a motion for summary judgment filed by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). State Farm filed its Motion on August 25, 1997 along with: (1) a "Narrative Summary Of Undisputed Facts And Memorandum Of Law Of The State Of

Alabama With Arguments;" and (2) a "Notice Of Filing Of Exhibits To Motion For Summary Judgment." Plaintiff filed a response on October 15, 1997 entitled "Plaintiff's Response To Defendant State Farm Mutual Automobile Insurance Company's Motion For Summary Judgment." Plaintiff also filed his own Affidavit in support of his motion.

After a careful review of the arguments of counsel, relevant law, and the record as a whole, the court finds that for the reasons set forth below, State Farm's Motion For Summary Judgment is due to be granted.

## JURISDICTION

The court properly exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity). The parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by (his) own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec, Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587; *see also Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. FACTUAL SUMMARY

At approximately 3:00 a.m., the morning of September 3, 1994, Browder was a passenger in a 1994 Chevrolet K–5 Blazer designed and manufactured by GM. The driver of the vehicle was one of Browder's friends named Tony Pierce. The two were traveling south on United States Highway 31 in Conecuh Coun-

ty, Alabama. The weather was clear and dry, and the highway was an unlit, rural, two lane asphalt road. A portion of Highway 31 approximately one-quarter of a mile from its intersection with County Road 71 had previously been closed for construction and had only recently reopened. Pierce believed that the purpose of the construction · was to straighten out several dangerous curves in the road.. Pierce had not been on Highway 31 since it had been reopened.

As Pierce was driving, he noticed that two. of the curves had been straightened out by the construction. One of the curves near the end of the construction, however, had not yet been straightened. At the point where the curve began, there was a bump in the road from where the old pavement met the new pavement.

As Pierce entered this part of the roadway, the Blazer ran off the right-hand side of the road. Pierce "snatched it back," and then "lost control" of the vehicle. (Pierce Dep. at 17, *see* State Farm Ex. To Mot. For Summ. J.) The Blazer slid sideways, overturned, and eventually came to a stop in an upright· position, on the left-hand side of the road. The vehicle was facing north, the opposite direction it had been traveling.

Pierce was still inside the vehicle when it came to a rest, and suffered no significant injuries. Browder was ejected from the vehicle during the accident, and was found approximately ten to twenty yards away. He suffered severe injuries, including partial paralyzation. *Why* the vehicle left the roadway and overturned is the subject of this lawsuit. Tangentially, Plaintiff sued State Farm for their alleged failure to pay Plaintiff's uninsured motorist claim. That specific issue is the subject of this Memorandum Opinion and Order.

## II. CONTENTIONS OF THE PARTIES AND LEGAL ANALYSIS

Browder's Complaint, as amended, sets forth four distinct Counts. Count I alleges wantonness against the driver of the vehicle, Tony Pierce. Browder contends that, as a result of Pierce's "willful or wanton misconduct in the operation of his vehicle, the vehicle left · the roadway and overturned." (Compl.¶ 11.) Although Pierce is no longer a Defendant in this action,[1] his actions while operating the Blazer are relevant to the issue of State Farm's liability.

■ Count II alleges negligence against "John Does 11 through 30" involving the portions of the roadway upon which Plaintiff was traveling. (Compl.¶ 13.) Plaintiff has not amended his Complaint to properly name any fictitious Defendants, however, and no evidence is offered against any person or entity involved with the design, construction, or repair of the roadway. In fact, Plaintiff does not substantively address this Count in any subsequent pleadings. Finally, "there is no provision for fictitious party practice under federal law." *McCree v. Sam's Club,* 159 F.R.D. 572, 574 n. 1 (M.D.Ala.1995); *see also New v. Sports & Recreation, Inc.,* 114 F.3d 1092, 1094 n. 1 (11th Cir.1997). Accordingly, the court finds that Count II of Plaintiff's Complaint, as amended, is due to be dismissed.

Counts III and IV are against GM and State Farm respectively.. Count III alleges that the Blazer was "unreasonably dangerous because of its propensity to roll over." (Compl.¶ 19.) Browder alleges that this unreasonably dangerous condition was a proximate cause of his injuries. (*Id.* ¶ 20.) Count IV contends that State Farm breached a contract of insurance it entered into with Browder by not paying compensation due under the contract's uninsured/under-insured motorist provision. (*Id.* ¶¶ 22–23.)

### A. Browder's Contentions Against State Farm

Browder's claim against State Farm is for breach of the uninsured/under-insured provisions of an insurance contract. (Compl.¶¶ 22–23.) Browder contends that State Farm has not compensated him for injuries suffered from the owner or operator (Pierce) of an uninsured/under-insured auto-

---

1. Pierce and Browder entered into a settlement agreement, the validity of which was later disputed. By an Order entered May .20, 1997, the portion of this action involving the settlement agreement between Plaintiff and Pierce was severed from the remainder of the action and remanded to the Circuit Court of Covington County, Alabama for further proceedings.

mobile, "for which Plaintiff would be legally entitled to recover damages." (*Id.*) Specifically, Browder contends that he has not received any compensation to which he is entitled under the policy, even after informing State Farm of his injuries resulting from the September 4, 1994 accident. (*Id.*)

Although State Farm "admits the existence of a policy of insurance between the defendant and the plaintiff," and "admits that the plaintiff was involved in an automobile accident on the date alleged," it "otherwise denies the material averments of paragraph[s 22 and 23]" of Plaintiff's complaint as outlined above. (State Farm's Answer ¶¶ 22–23.)

In addition to the defenses and denials articulated in its Answer, State Farm raises three grounds in support of its Motion For Summary Judgment. (State Farm's Mem. Of Law at 5). First, State Farm denies that the alleged tortfeasor, Mr. Pierce, is an uninsured or under-insured motorist. (*Id.*) Second, State Farm denies that Pierce acted negligently or wantonly, as Browder alleges. (*Id.*) Third, State Farm asserts that even if Pierce acted negligently, Alabama's Guest Statute, Ala.Code § 32–1–2 (1975), precludes recovery by Browder.[2] (*Id.*)

### 1. Plaintiff Has Failed To Establish That Pierce Was An Uninsured Or Under-insured Motorist

■ By suing State Farm for breach of the uninsured/under-insured provisions of his insurance contract, Plaintiff is necessarily alleging that Pierce was uninsured or under-insured. To recover under the contract, Plaintiff has the burden of proving that his injuries were caused by an uninsured or under-insured motorist. *Ogle v. Long*, 551 So.2d 914 (Ala.1989). Although Browder does not have to secure judgment against Pierce to recover from State Farm, *Baldwin*, 470 So.2d at 1233, he does have to show that "the other motorist was uninsured [or under-

insured],[3] legally liable for damage to the insured, and the amount of this liability." *Id.* at 1233 (quoting *Griffin*, 286 So.2d at 306); *see also Thompson v. American States Ins. Co.*, 687 F.Supp. 559, 561 (M.D.Ala.1988); *Harvey v. Mitchell*, 522 So.2d 771, 773 (Ala. 1988).

■ Although Plaintiff alleges that Pierce was uninsured or under-insured, State Farm denies this allegation in its Motion For Summary Judgment, and Plaintiff has not provided any evidence supporting this contention other than the allegations in his Complaint. Plaintiff has not submitted either the original or a copy of the alleged insurance contract under which he seeks to hold State Farm liable, nor has he quoted provisions from the contract in any of his pleadings. Although State Farm admits that a contract of insurance exists between it and Plaintiff, State Farm denies Plaintiff's specific allegations articulated in his Complaint, and there is no evidence before the court of the provisions or terms of the contract that Plaintiff claims State Farm violated. Even though Alabama law provides that every automobile insurance policy issued in Alabama must contain uninsured/under-insured motorist coverage, *see* Ala.Code § 32–7–23 (1975), and the statute becomes part of each insurance policy as if written into the contract, *State Farm Mut. Auto. Ins. Co. v. Baldwin*, 764 F.2d 773 (11th Cir.1985); *Sweatt v. Great Am. Ins. Co.*, 574 So.2d 732 (Ala.1990); *Safeco Ins. Co. of Am. v. Jones*, 286 Ala. 606, 243 So.2d 736 (1970), such coverage is not compulsory and may be rejected by the insured. *See* Ala Code § 32–7–23 (1975); *Best*, 540 So.2d at 1382; *Insurance Co. of N. Am. v. Thomas*, 337 So.2d 365 (Ala.Civ.App.1976); *State Farm Mut. Auto. Ins. Co. v. Martin*, 292 Ala. 103, 289 So.2d 606 (1974). Without the benefit of the contract, or provisions thereof, the court cannot determine whether Plaintiff has rejected uninsured/under-insured motorist coverage,

---

**2.** State Farm is entitled to assert, "in addition to policy defenses, the substantive defenses that would have been available to the uninsured motorist." *State Farm Auto., Ins., Co. v. Baldwin*, 470 So.2d 1230, 1233–34 (Ala.1985)(quoting *State Farm Mut. Auto. Ins. Co., Inc. v. Griffin*, 51 Ala.App. 426, 286 So.2d 302, 306 (Ala.Civ.App. 1973)).

**3.** Alabama makes no distinction between uninsured and under-insured motorist coverage in terms of whether each type of coverage is mandatory or permissive. As an initial matter, Alabama Code § 32–7–23 requires both. Ala.Code. § 32–7–23 (1975). But, because Alabama is not a compulsory insurance state, an insured may reject such coverage. *Id.; Best v. Auto–Owners Ins. Co.*, 540 So.2d 1381, 1382 (Ala.1989).

or, assuming that he did not, whether his claims fall within the policy and/or statutory provisions.

Under Federal Rule of Civil Procedure 56(e), Plaintiff "may not rest upon the mere allegations or denials of the adverse party's pleadings," and his response "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). As noted above, Rule 56 allows a grant of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322–23. Plaintiff bears the burden of showing that Pierce was uninsured or under-insured, *Ogle,* 551 So.2d 914, and the record is devoid of evidence supporting this contention. Plaintiff also fails to show that the uninsured/under-insured provisions of his insurance contract with State Farm are viable. At this stage of the proceedings, the court is keenly aware of the fact that it is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party, here the Plaintiff. *Adickes,* 398 U.S. at 157. Plaintiff, however, has failed to meet his burden of production, *see Celotex,* 477 U.S. at 324, and has neither addressed these issues in his response to State Farm's Motion For Summary Judgment, nor proffered evidence that the court can construe in a light most favorable to him. Accordingly, the court finds that State Farm's Motion For Summary Judgment is due to be granted.

### 2. Plaintiff's Claims Against State Farm Are Barred By Alabama's Guest Statute

Additionally, and in the alternative, even assuming *arguendo,* that Pierce was uninsured or under-insured at the time of the accident, and that Plaintiff's insurance contract with State Farm contained valid, en-

forceable, uninsured/under-insured motorist provisions, State Farm is entitled to summary judgment under Alabama's Guest Statute.[4] *See* Ala.Code § 32–1–2 (1975).

The Alabama "Guest Statute" provides that:

The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle.

Ala.Code § 32–1–2 (1975). The purpose of the statute is "to prevent generous drivers, who offer rides to guests, from being sued in what often are close cases of negligence." *Ex parte Anderson,* 682 So.2d 467 (Ala.1996) (citations omitted). Because the Guest Statute precludes liability for conduct that is only negligent, a plaintiff must show "willful or wanton misconduct" to avoid the statute's application. *See* Ala.Code § 32–1–2 (1975); *Ex Parte Anderson,* 682 So.2d at 469; *Davis v. Davis,* 622 So.2d 901, 902 (Ala.1993).

### (a) *Plaintiff Has Not Established That Pierce's Actions Rise To The Level of "Willful Or Wanton Misconduct."*

Ordinarily, whether a person's actions rise to the level of "willful or wanton misconduct" is determined on the facts of each case. *Ex parte Anderson,* 682 So.2d at 470. Negligence and wantonness "are qualitatively different tort concepts of actionable culpability." *Id.* at 470 (citing *Lynn Strickland Sales & Serv., Inc. v. Aero–Lane Fabricators, Inc.,* 510 So.2d 142, 145 (Ala.1987) (citations omitted)). Conduct that is negligent "is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act." *Id.* at 470 (citing *Lynn Strickland,* 510

---

4. As noted *supra,* note 2, State Farm is entitled to assert any substantive defenses that Pierce would be entitled to assert.

So.2d at 145 (citations omitted)). Wanton misconduct "requires more than a showing of some form of inadvertence on the part of the driver; it requires a showing of some degree of conscious culpability." *Ex parte Anderson,* 682 So.2d at 469. "Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury." *Id.* at 470 (citing *Lynn Strickland,* 510 So.2d at 145 (citations omitted)). Wantonness is "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala.Code § 6–11–20(b)(3) (1975).

State Farm proffers two arguments in relation to the applicability of Alabama's Guest Statute. First, State Farm contends, and the court agrees that the record shows, that there is no evidence of wanton conduct by Tony Pierce. Specifically, State Farm notes that there is no evidence that Pierce may have been under the influence of alcohol, that he was driving excessively fast, or that he undertook any other action which could reasonably be construed as wanton. (State Farm's Narrative Summ. of Undisputed Facts and Mem. Of Law at 4). State Farm also correctly notes that the mere fact that the Blazer left the roadway while under Pierce's control does not establish wantonness. (State Farm's Narrative Summ. Of Undisputed Facts and Mem. Of Law at 5 (citing *Rogers v. Kimbrell,* 658 So.2d 387 (Ala.1995)).)

■ Plaintiff does not offer any evidence in response to State Farm's assertions that raise a genuine issue of fact as to whether Pierce's conduct was wanton, and an independent review of the record fails to disclose any such evidence as well. Plaintiff answered then Defendant Pierce's Interrogatory requesting a recitation of the events surrounding the accident by stating the following:

I have no clear memory that includes the few minutes prior to the accident. The last thing I remember clearly is being up town in McKenzie and getting in the vehicle with Tony Pierce. The next thing I remember is about 3 days later when I was in intensive care in Montgomery before surgery, bits and fragments of what hap-

pened are coming back to me. If my memory returns, I will let you know.

(Pl.'s Answers To Interrogs. Propounded By Def. Pierce at 4, ¶ 12.) The court finds that a reasonable jury could not conclude that Pierce's actions were willful or wanton, and that, accordingly, Alabama's Guest Statute precludes a finding of liability against State Farm. Further, even if Pierce's action were construed as negligent, and the incident was not determined to be an accident, as the following subsection delineates, the Guest Statute still bars recovery. *See* Ala.Code. 32–1–2 (1975).

### (b) *Plaintiff Was A "Guest" In Pierce's Automobile As Defined By The Guest Statute.*

■ Additionally, in the alternative, and as a third ground for granting State Farm's Motion For Summary Judgment, the court finds that Plaintiff was a "guest" as defined by the statute, and thus is precluded from recovering from State Farm. The Guest Statute bars the claims of a "guest while being transported without payment." Ala.Code § 32–1–2 (1975). As the Alabama Supreme Court noted in *Sullivan v. Davis,* 263 Ala. 685, 83 So.2d 434, 436 (1955), the definitions of "guest" and "payment" are nebulous, and most courts "seem to find great difficulty in applying them to the varied factual situations which require adjudication.... The commercial and social relationships that can exist between the driver of an automobile and his passenger are almost as numerous and varied as human activity itself." *Id.* As the *Sullivan* court explained:

At one extreme we have the "hitchhiker" guest who clearly falls within the purview of the statute. At the other extreme we have the passenger who pays the driver to be transported to a particular place and who is unquestionably beyond the scope of the statute. Between these two extremes the dividing line may at times become illusory and shadowy. It is sometimes necessary to enter into a detailed examination of the present and former relations between driver and passenger; implied and expressed arrangements made between them as to the conduct of the particular trip; the purpose of the mission; the benefits accru-

ing to the driver and passenger from the expedition; and any other factors that bring into proper focus the true status of the parties at the time of the accident which give rise to the legal action.

*Sullivan,* 83 So.2d at 436.

State Farm contends that "[i]f the only benefits received by a driver are those such as are incidental to good will, then the passenger is a 'guest' within the meaning of the statute." (State Farm's Narrative Summ. Of Undisputed Facts and Mem. Of Law at 8 (citing *Davis v. Davis,* 622 So.2d 901 (Ala. 1993).)) Consequently, State Farm argues, because Pierce received no benefit from giving Plaintiff a ride on the night of the accident, he is a "guest" under the statute and is precluded from recovering. *Id.*

Not unlike the standard advanced by State Farm, Plaintiff contends that "if the transportation of a person confers a benefit only on the passenger to whom the ride is given, and no advantage other than such as are incidental to hospitality, goodwill or the like on the person furnishing the transportation, then the rider is a guest." (Pl.'s Resp. To State Farm's Mot. For Summ. J. at 2.) Plaintiff argues that his Affidavit establishes that he was not a "guest" under the statute but that he was acting as a chaperone for Pierce, and thus was conferring a "benefit" upon him. (*Id.* at 3; *see also* Browder Aff. at 1–2.) Specifically, Browder contends that prior to the accident, Pierce asked Browder to accompany him "in order that Mr. Pierce could meet with some female acquaintances in a more comfortable social setting." (Pl.'s Resp. To State Farm's Mot. For Summ. J. at 2.) Browder contends that he joined Pierce "in order to confer on Mr. Pierce the benefit of rounding out a foursome and creating a comfortable social setting for Mr. Pierce to meet with a female friend or someone with whom he hoped to become friendly." (*Id.* at 2–3.) Plaintiff contends that this fact alone precludes a grant of summary judgment for State Farm because it "raises a question of fact regarding his status as a quest [sic] in Mr. Pierce's vehicle on the night of this accident." (*Id.* at 3.)

■ Although Plaintiff correctly notes that the question of whether a passenger was a guest is ordinarily left to the determination of a jury, (*Id.* at 3 (citing *Cash v. Caldwell,* 603 So.2d 1001 (Ala.1992); *Sellers v. Sexton,* 576 So.2d 172 (Ala.1991).)), "where reasonable minds can reach but one conclusion from the evidence, the question becomes one of law for the court." *Davis,* 622 So.2d at 902 (citing *Harrison v. McCleary,* 281 Ala. 87, 199 So.2d 165 (1967)). Furthermore, while Plaintiff contends that helping Pierce feel more comfortable in a social setting is a benefit precluding application of the statute, Plaintiff ignores the very language he quotes to the effect that a passenger is a guest where "no advantage other than such as are incidental to hospitality, goodwill or the like" flow to the person furnishing the transportation. (Pl.'s Resp. To State Farm's Mot. For Summ. J. at 2.) Finally, Plaintiff offers no case-law in support of his assertion that accompanying the driver of the vehicle to a social gathering to make the driver feel more comfortable renders the Plaintiff not a "guest," and is a benefit sufficient to preclude application of the statute.

"Rounding out a foursome" and "creating a comfortable social setting," (*Id.* at 2–3), are certainly incidental to hospitality, goodwill or the like. There is no evidence of a business relationship between Browder and Pierce, *see. e.g., Dorman v. Jackson,* 623 So.2d 1056 (Ala.1993); *Harrison v. McCleary,* 281 Ala. 87, 199 So.2d 165 (1967), and Browder did not help or volunteer to pay for gas, or other costs of transportation, *see e.g., Sellers v. Sexton,* 576 So.2d 172 (Ala.1991). Nor is there any evidence that Browder ever helped to pay transportation costs in the past or that this particular trip was part of a regularly scheduled transportation arrangement. *See, e.g., Carter v. Reed,* 638 So.2d 833 (Ala.1994); *Sellers,* 576 So.2d at 174; *Wagnon v. Patterson,* 260 Ala. 297, 70 So.2d 244 (1954). Further, even if there was a regular arrangement between the two, of which there is no evidence, the context of this particular ride was purely social. *See Klaber v. Elliott,* 533 So.2d 576 (Ala.1988). Finally, any benefit to Pierce, which Plaintiff describes as "rounding out a foursome" and "creating a comfortable social setting for Mr. Pierce to meet with a female friend or someone with whom he hoped to become friendly," was "so nebulous and intangible, and ... any anticipated fu-

ture benefits were so speculative and dependent on future circumstances, that there was not, as a matter of law, enough benefit" to preclude application of the statute. *Boggs v. Turner,* 277 Ala. 157, 168 So.2d 1, 3 (1964). The court specifically notes the "speculative" and wholly "dependent on future circumstances" nature of developing future friendships, notwithstanding Plaintiff's ostensibly well-intentioned and admirable effort to assist his friend in meeting a "female friend or someone with whom he hoped to become friendly."

The facts of this case are similar to *Davis v. Davis,* 622 So.2d 901 (Ala.1993). There, Nancy Davis, the defendant, volunteered to take her niece to a doctor's appointment. *Id.* at 901. Nancy asked the plaintiff, Dorothy Davis, the child's grandmother, to accompany her to help take care of the niece. As Nancy was driving to the doctor's office, her vehicle was involved in an accident and Dorothy was injured. *Id.* The Alabama Supreme Court found that plaintiff was a "guest" within the meaning of the statute because Dorothy accompanied Nancy to the doctor's appointment out of "love and concern" for her grandchild. *Id.* Further, Dorothy neither sought nor received any payment or benefit from the trip other than that incidental to good will. *Id.*

Similarly, Browder proceeded on the trip out of concern for his friend, Pierce, and did not seek, nor received any payment or other benefit from the trip, other than that incidental to hospitality and good will. If the Alabama Supreme Court is willing to find that a passenger is a guest when the driver of the vehicle asks the passenger to accompany her to a doctor's appointment to help care for her sick niece, this court is able to find that a plaintiff accompanying a friend to a social gathering to make the friend feel more comfortable is a guest under the statute. The benefit accruing to the driver in *Davis,* that of helping to care for the sick niece, is certainly more of a "benefit" than Browder's proffered "benefit" in this case—helping Pierce feel more comfortable in a social setting.

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that State Farm's Motion For Summary Judgment be and the same is hereby GRANTED. It is further CONSIDERED and ORDERED that Count II of Plaintiff's Complaint alleging negligence against "John Does 11 through 30" be and the same is hereby DISMISSED.